USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED:___10/14/2020___

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

Steven E. Greer,

                              Plaintiff,

              -against-

Tucker Carlson et al.,

                              Defendants.

1:20-cv-05484 (LTS) (SDA)

<u>OPINION AND ORDER</u>

**STEWART D. AARON, UNITED STATES MAGISTRATE JUDGE.**

Before the Court is a motion by *pro* se plaintiff, Steven E. Greer ("Plaintiff" or "Greer"), to conduct jurisdictional discovery.[1] (Pl.'s Not. of Mot., ECF No. 52.) The discovery sought is for purposes of opposing a motion by Defendants Tucker Carlson ("Carlson"); Fox Corporation; Fox News Media; Fox News Network, LLC ("FNN"); Lachlan Murdoch; Suzanne Scott; Justin Wells; Charles Gasparino; Fox Business Network; Brian Jones; News Corporation; Dow Jones; The Wall Street Journal; Gerard Baker; and Jennifer Strasburg ("Strasberg") (collectively, the "Moving Defendants"), pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure, to dismiss this action for lack of subject matter jurisdiction. (*See* Defs.' Not. of Mot., ECF No. 46.) The Moving Defendants contend that subject matter jurisdiction does not exist because Plaintiff's jurisdictional predicate, *i.e.*, diversity, is lacking based upon the citizenship of Carlson and Strasberg.[2] (*See* Defs.' Mem. at 3-7.)

---

[1] Relatedly, Plaintiff filed a letter, dated September 30, 2020, seeking to "stay the proceedings in the defendants' motion to dismiss until the matter of jurisdictional discovery is adjudicated." (Pl.'s 9/30/20 Ltr., ECF No. 72.) By the disposition of the pending motion, Plaintiff's letter request is rendered moot.

[2] The Moving Defendants contend that Plaintiff is a citizen of Florida, as is Carlson, and that Strasberg is a U.S. citizen domiciled abroad, both of which destroy diversity. (*See* Defs.' Mem., ECF No. 50, at 3-7.)

1

For the reasons set forth below, Plaintiff's motion for jurisdictional discovery is GRANTED IN PART and DENIED IN PART.

## PROCEDURAL HISTORY

On July 14, 2020, Greer commenced this action by filing a Complaint asserting a federal copyright infringement claim, as well as six state law claims. (*See* Compl., ECF No. 1.) In his Complaint, Greer based subject matter jurisdiction on diversity of citizenship, but also asserted jurisdiction predicated upon his federal copyright claim (with attendant supplemental jurisdiction over his state law claims). (*See id*. ¶¶ 85-87.) In his Complaint, he alleged that he "is a citizen of the United States of America currently with state residencies in New York and Florida." (*Id*. ¶ 6.) On July 21, 2020, a "corrected" Complaint was filed alleging the same claims and jurisdictional predicates. (*See* Corrected Compl., ECF No. 6.)

On August 13, 2020, Greer filed his Amended Complaint. (*See* Am. Compl.) On September 18, 2020, the Moving Defendants filed their motion to dismiss for lack of subject matter jurisdiction. (*See* Defs.' Not. of Mot.) On September 21, 2020, Greer filed his motion for jurisdictional discovery (*see* Pl.'s Not. of Mot.), and on September 30, 2020, he requested that the proceedings be stayed until his motion for jurisdictional discovery is decided. (*See* Pl.'s 9/30/20 Ltr.) On September 29, 2020, the Moving Defendants opposed Greer's motion for jurisdictional discovery (Defs.' Opp. Mem., ECF No. 70), and on October 5, 2020, they opposed his request for a stay. (Defs.' 10/5/2020 Ltr., ECF No. 80.)

## BACKGROUND

In his Amended Complaint, Greer currently asserts six state law causes of action against eighteen defendants. (Am. Compl., ECF No. 40.) He bases subject matter jurisdiction on diversity

of citizenship.[3] (*Id*. ¶ 85.) In this section, the Court limits its recitation of facts to those that pertain to the issue of diversity.

Greer alleges in the Amended Complaint that he "is a citizen of the United States of America currently living in Florida."[4] (Am. Compl. ¶ 6.) Greer alleges that Carlson "primarily lives" in Washington, D.C., but that Carlson's "current address is actually unknown." (*Id*. ¶ 18.) Greer also alleges that Strasberg "is a U.S. citizen" who has a "last known address" in New Jersey, but that "she seems to have been relocated by her employer and is now living in London, England, UK." (*Id*. ¶ 76.)

In support of their motion to dismiss, the Moving Defendants have submitted Declarations from Carlson and Strasberg. (Carlson Decl., ECF No. 48; Strasberg Decl., ECF No. 49.) Carlson states that, "[f]rom January 1, 2020, to the present, [he has] resided in the State of Florida." (Carlson Decl. ¶ 1.) He states that he "own[s] a home located in Florida, which [he] regard[s] as [his] permanent residence," and that he "pay[s] taxes in Florida." (*Id*. ¶ 2.) Carlson has "a Florida driver's license and [is] registered to vote in Florida." (*Id*. ¶ 3.) Carlson also states

---

[3] Plaintiff's Amended Complaint also alleges that the Court has supplemental jurisdiction over his state law claims, pursuant to under 28 U.S.C. § 1367 (Am. Compl. ¶ 86), but the Amended Complaint does not allege any federal claims to serve as a basis for exercising supplemental jurisdiction over the state law claims. *See Rockwell Int'l Corp. v. United States*, 549 U.S. 457, 474 (2007) ("courts look to [an] amended complaint to determine jurisdiction"). In *Wellness Cmty.-Nat'l v. Wellness House*, 70 F.3d 46 (7th Cir. 1995), relied on by the Supreme Court in *Rockwell Int'l*, the Seventh Circuit held that "once the First Amended Complaint superseded the original complaint, there was no federal claim to which these state claims could be 'supplemental.'" *Id*. at 50.

[4] This allegation is in contrast to his earlier allegation that Greer was "a citizen of the United States of America currently with state residencies in New York and Florida." (*See* Compl. ¶ 6; Corrected Compl. ¶ 6.) The allegation also is in contrast to the allegations made by Greer in his Complaint and Amended Complaint in the action *Greer v. Mehiel*, No. 15-CV-06119 (S.D.N.Y.), in 2015 that he was "a citizen of the United States of America currently living and domiciled in New York, New York" and that he was a "citizen of New York and the United States." (Compl., 15-CV-06119 ECF No. 1, ¶ 4; Am. Compl., 15-CV-06119 ECF No. 75, ¶ 4.)

3

that "[t]he State of Florida is [his] true, fixed home and principal establishment, and when [he] leave[s] Florida, [he has] the intention to return to it." (*Id*. ¶ 5.) He states that he has "documentary evidence that could further substantiate his affirmation of domicile in Florida[, b]ut out of concern for doxing,[5] [he] would rather not make such evidence available in a public filing." (*Id*. ¶ 4.) However, he offers to make the evidence available to the Court for *in camera* review. (*See id*.)

Strasberg states that she is a United States citizen and that from "September 2013 to the present, [she has] resided in the United Kingdom." (Strasberg Decl. ¶¶ 1, 3.) She states that she "rent[s] a home located in the county of Hertfordshire outside of London, England" that she "regard[s] as [her] permanent residence." (*Id*. ¶ 4.) Strasberg states that she is "registered to vote as a U.S. citizen residing abroad." (*Id*. ¶ 5.) She is employed by Dow Jones "based out of The Wall Street Journal's London offices." (*Id*. ¶ 8.) Strasberg also states that "the United Kingdom is [her] true fixed home and principal establishment, and to which, whenever [she is] absent, [she has] the intention of returning." (*Id*. ¶ 11.) Like Carlson, she claims to have documentary evidence to support her domicile and also is concerned about doxing. (*See id*. ¶ 9.) Strasberg too offers to make her evidence available to the Court for *in camera* review. (*See id*. ¶ 10.)

In his motion now before the Court, Greer seeks discovery "in order to flush out the truth of where Carlson and Strasburg live now and intend to live in the future." (*See* Pl.'s Mem., ECF No. 53, at 10.) He seeks depositions and document production, including "[a]ddresses of all real

---

[5] "'[D]oxing' (sometimes spelled 'doxxing') is short for 'dropping documents.'" *Vangheluwe v. Got News, LLC*, 365 F. Supp. 3d 850, 858 (E.D. Mich. 2019) (citation omitted). "The practice involves 'using the Internet to source out and collect someone's personal and private information and then publicly releasing that information online.'" *Id*. (citation omitted). "The 'goal of doxxing is typically retribution, harassment or humiliation.'" *Id*. at 859 (citation omitted).

properties where Defendants stay overnight and days spent at those locations," "[d]etails of home sales and purchases, and/or leases, including dates of all key transactions, such as listing and closing of the sale;" "[d]etails of Defendants' job functions with Fox or News Corp, such as how and where they film TV shows, report to newspaper editors, and physically show up to work each day;" "[c]opies of all state ID's including driver's licenses;" "[p]roof of voter registration and testimony on locations of past voting;" "[a]ll tax filings to show state taxes paid [with d]ollar amounts . . . redacted;" "[t]estimony and subpoenaed records of all flight itineraries to demonstrate commuting to work and time spent at claimed domicile, and the same for hotels;" and "[p]roof of membership in unions, fraternal organizations, churches, clubs, and other associations." (*Id*. at 10-11.) In his September 30 letter, Greer states that "the discovery [he] seek[s] is required before [he] can address the [motion to dismiss]." (Pl.'s 9/30/20 Ltr. at 1.)

In response to Greer's motion for jurisdictional discovery, the Moving Defendants submitted supplemental Declarations of Carlson and Strasberg and also submit a Declaration of Chelsea Conkling ("Conkling"). (Carlson Supp. Decl., ECF No. 67; Strasberg Supp. Decl., ECF No. 68; Conkling Decl., ECF No. 69.) Carlson states in his supplemental Declaration that, "[i]n the autumn of 2019, [he] decided to make Florida a permanent home and purchased a residence, after 25 years of renting a residence in Florida." (Carlson Supp. Decl. ¶ 2.) "The purchase date for the Florida house, which is near the residence that [Carlson] had been renting, was January 7, 2020, six months before this lawsuit was filed[, and he] began to furnish the Florida house on that date, and began to move personal items from [his] Washington, DC home to the Florida location in February." (*Id*.) Carlson states that he "put [his] Washington, DC house up for sale in April of 2020" and "accepted an offer to buy the property in May," and that "the closing took

place on July 9, 2020, which was the week before this action was filed." (*Id*. ¶ 3.) He also states

that he acquired his Florida driver's license and registered to vote in Florida on February 20, 2020,

and that he has no other driver's licenses. (*See id*. ¶ 5.)

Conkling, a Human Resources Generalist at FNN, states that "[o]n December 19, 2019,

Tucker Carlson's assistant notified the Human Resources Department at Fox News of a change of

his residence for payroll and tax purposes." (Conkling Decl. ¶ 3.) She also stated that, "[a]t that

time, Mr. Carlson changed to a Florida address as of January 1, 2020." (*Id*.)

Strasberg states in her supplemental Declaration that, "apart from occasional travel to

the U.S. for work or family visits, [she has] resided exclusively in the United Kingdom since

September 2013." (Strasberg Supp. Decl. ¶ 4.) She "own[s] a property in Brooklyn, New York,

[but] it has been rented out to tenants pursuant to long term leases since [she] left the United

States in 2013." (*Id*. ¶ 5.) Strasberg also states that she has filed U.K. tax returns annually since

2014, that she has "a National Insurance Number (similar to a U.S. Social Security number) that

was issued to [her] by the British government," that she is "registered with the National Health

Service (NHS) in the U.K., where [she] receive[s her] health care" and that she "owns a car in the

U.K." and holds "a U.K. Driving Licence expiring in 2027." (*Id*. ¶¶ 8-10.)

In reply, Greer argues in substance that he has made a *prima facie* showing regarding

diversity jurisdiction and that, in any event, all that is required is that he make a "sufficient start"

towards establishing jurisdiction, and he also has met that lesser standard. (*See* Pl.'s Reply, ECF

No. 73, at 6.)

6

**LEGAL STANDARDS**

**I.        Diversity Jurisdiction**

"'It is a fundamental precept that federal courts are courts of limited jurisdiction' and lack the power to disregard such limits as have been imposed by the Constitution or Congress." *Durant, Nichols, Houston, Hodgson & Cortese-Costa P.C. v. Dupont*, 565 F.3d 56, 62 (2d Cir. 2009) (quoting *Owen Equip. & Erection Co. v. Kroger*, 437 U.S. 365, 374 (1978)). "Perhaps the most important limit is subject-matter jurisdiction, which defines 'a court's competence to adjudicate a particular category of cases.'" *Platinum-Montaur Life Scis., LLC v. Navidea Biopharmaceuticals, Inc.*, 943 F.3d 613, 617 (2d Cir. 2019) (quoting *Wachovia Bank v. Schmidt*, 546 U.S. 303, 305 (2006)). "'[B]ecause it involves a court's power to hear a case,' subject-matter jurisdiction cannot be forfeited, waived, or conferred by consent of the parties." *Id*. (quoting *United States v. Cotton*, 535 U.S. 625, 630 (2002)).

This case involves diversity jurisdiction. The Court has "original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between citizens of the different States." 28 U.S.C. § 1332(a)(1). "The Supreme Court has interpreted 'citizens of different States' to grant jurisdiction only 'if diversity of citizenship among the parties is complete, *i.e.*, only if there is no plaintiff and no defendant who are citizens of the same State.'" *Platinum-Montaur*, 943 F.3d at 617 (quoting *Wis. Dep't of Corr. v. Schacht*, 524 U.S. 381, 388 (1998)).

"'It is well-settled that the party asserting federal jurisdiction bears the burden of establishing jurisdiction,' and it must prove jurisdiction by a 'preponderance of evidence.'" *Platinum-Montaur*, 943 F.3d at 617 (quoting *Blockbuster, Inc. v. Galeno*, 472 F.3d 53, 57 (2d Cir.

2006); *Liranzo v. United States*, 690 F.3d 78, 84 (2d Cir. 2012)). "In deciding a Federal Rule of Civil Procedure 12(b)(1) motion to dismiss for lack of subject matter jurisdiction, a court may consider evidence outside the pleadings." *Haber v. United States*, No. 14-CV-08325 (LTS) (KNF), 2015 WL 3797308, at *2 (S.D.N.Y. June 18, 2015), *aff'd*, 823 F.3d 746 (2d Cir. 2016) (citing *Kamen v. Am. Tel. & Tel. Co.*, 791 F.2d 1006, 1011 (2d Cir. 1986)).

"A party's citizenship under 28 U.S.C. § 1332 depends on his domicile at the time the legal action is commenced." *Chevalier v. USA Exp. Moving & Storage Inc.*, No. 03-CV-09059 (PKL), 2004 WL 1207874, at *2 (S.D.N.Y. June 2, 2004) (citing *Linardos v. Fortuna*, 157 F.3d 945, 947-48 (2d Cir. 1998)); *see also Van Buskirk v. United Grp. of Companies, Inc.*, 935 F.3d 49, 53 (2d Cir. 2019) ("For purposes of diversity jurisdiction, the relevant domicile is the parties' domicile at the time the complaint was filed." (citation omitted)). "Domicile is 'the place where a person has his true fixed home and principal establishment, and to which, whenever he is absent, he has the intention of returning.'" *Palazzo ex rel. Delmage*, 232 F.3d 38, 42 (2d Cir. 2000) (quoting *Linardos*, 157 F.3d at 948 (2d Cir. 1998)). "Domicile is established initially at birth and is presumed to continue in the same place, absent sufficient evidence of a change." *Id*. To effect a change of domicile, "two things are indispensable: First, residence in a new domicil[e]; and, second, the intention to remain there." *Id*. (quoting *Sun Printing & Publ'g Ass'n v. Edwards*, 194 U.S. 377, 383 (1904)). To determine domicile, "[a] court must consider the entire course of a person's conduct in order to determine the relevant intent." *Korb v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, No. 03-CV-10333 (CSH), 2006 WL 300477, at *1 (S.D.N.Y. Feb. 7, 2006).

> Factors that courts often consider include: voting registration and voting practices, location of real and personal property, location where taxes are paid, location of brokerage and bank accounts, driver's and other licenses, membership in churches, clubs, and associations, whether the person owns or rents his place of

residence, and locations of the person's physician, lawyer, accountant, dentist, or stockbroker. A 'totality of the evidence' approach is called for, and no single factor is conclusive, although the residence of a married person's spouse and children (if the couple has not separated) is given considerable weight.

*Id*. (internal citations and quotation marks omitted).

"A person has only one domicile at any given moment, though it may change." *Van Buskirk*, 935 F.3d at 53 (citing *Palazzo*, 232 F.3d at 42). The general rule regarding proof of a change in domicile is that a party "has the burden of proving the 'require[d] . . . intent to give up the old and take up the new [domicile], coupled with an actual acquisition of a residence in the new locality,' and must prove those facts 'by clear and convincing evidence.'"[6] *Palazzo*, 232 F.3d at 42 (quoting *Katz v. Goodyear Tire & Rubber Co.*, 737 F.2d 238, 243-44 (2d Cir. 1984)).

"United States citizens who are domiciled abroad are neither citizens of any state of the United States nor citizens or subjects of a foreign state, and [28 U.S.C] § 1332(a) does not provide that the courts have jurisdiction over a suit to which such persons are parties." *Cresswell v. Sullivan & Cromwell*, 922 F.2d 60, 68 (2d Cir. 1990); *accord Herrick Co. v. SCS Commc'ns, Inc.*, 251 F.3d 315, 322 (2d Cir. 2001). Indeed, "the language of § 1332(a) is specific and requires the conclusion that a suit by or against United States citizens domiciled abroad may not be premised on diversity." *Cresswell*, 922 F.2d at 68.

---

[6] In cases like the one before the Court, where it is alleged that a party challenging federal jurisdictoin has changed his or her domicile, there is a potential conflict as to which party bears the burden of proof, *i.e.*, "the party asserting federal jurisdiction," *see Platinum-Montaur*, 943 F.3d at 617, or the party alleging that his or her domicile has changed. *See Palazzo*, 232 F.3d at 42. As explained in *Pacho v. Enter. Rent-A-Car*, 510 F. Supp. 2d 331 (S.D.N.Y. 2007), this conflict "has been resolved by the Second Circuit." *Id*. at 335 (citing *Herrick*, 251 F.3d at 323). The party invoking diversity jurisdiction "bears the burden of persuasion with respect to [the] initial domicile" of the party opposing such jurisdiction. *Id*. "Once such an original domicile is demonstrated, *Herrick* teaches that the opposing party 'bear[s] the burden of proving that [the initial domicile] had been abandoned for' some other domicile." *Id*. (quoting *Herrick*, 251 F.3d at 324).

II.     **Jurisdictional Discovery**

To obtain jurisdictional discovery, a plaintiff must show that the discovery is "likely to produce facts needed to withstand a Rule 12(b)(1) motion." *Molchatsky v. United States*, 778 F. Supp. 2d 421, 438 (S.D.N.Y. 2011) (quoting *Freeman v. United States*, 556 F.3d 326, 342 (5th Cir. 2009)), *aff'd*, 713 F.3d 159 (2d Cir. 2013); *see also Mills 2011 LLC v. Synovus Bank*, 921 F. Supp. 2d 219, 228 (S.D.N.Y. 2013) (jurisdictional discovery appropriate where there has been a "threshold showing" of "facts that would support a colorable claim of jurisdiction"). It has been held in an analogous context regarding personal (rather than subject matter) jurisdiction that a court may order jurisdictional discovery where, "even if [a] plaintiff has not made a prima facie showing [of jurisdiction, it has] made a sufficient start toward establishing personal jurisdiction." *City of Almaty v. Ablyazov*, 278 F. Supp. 3d 776, 809 (S.D.N.Y. 2017) (internal quotation marks omitted); *see also Ehrenfeld v. Mahfouz*, 489 F.3d 542, 550 n.6 (2d Cir. 2007) (stating that it would be "legal error" for district court to "forbid[ ] jurisdictional discovery any time a plaintiff does not make a prima facie showing of jurisdiction"). Of course, however, discovery need not be granted to permit a fishing expedition for jurisdictional facts. *See RSM Prod. Corp. v. Fridman*, 643 F. Supp. 2d 382, 402 (S.D.N.Y. 2009), *aff'd*, 387 F. App'x 72 (2d Cir. 2010).

It is within a district court's discretion to determine whether a plaintiff is entitled to conduct jurisdictional discovery and to "devis[e] the procedures . . . to ferret out the facts pertinent to jurisdiction." *See APWU v. Potter*, 343 F.3d 619, 627 (2d Cir. 2003); *see also Prakash v. Am. Univ.*, 727 F.2d 1174, 1179 (D.C. Cir. 1984) ("court has considerable latitude in devising the procedures it will follow to ferret out the facts pertinent to jurisdiction").

**DISCUSSION**

**I.**     **Grant Of Limited Jurisdictional Discovery**

Plaintiff has made a sufficient start towards establishing that subject matter jurisdiction exists. Plaintiff alleged that Carlson "primarily lives" in Washington, D.C. (Am. Compl. ¶ 18), and Carlson does not dispute that, up to the end of 2019, his domicile was in Washington, D.C. Thus, the Court finds that Plaintiff has met his burden of persuasion regarding Carlson's initial domicile. *See Pacho*, 510 F. Supp. 2d  at 335. Thus, it is now incumbent on Carlson to prove that he "abandoned" his initial domicile in Washington, D.C. for a domicile in Florida. *See id*. The Court finds that Plaintiff is entitled to some limited discovery before determining whether Carlson has met his burden of proof. *See Townsend Rabinowitz Pantaleoni & Valente, P.C. v. Holland Indus., Inc*., 109 F.R.D. 671, 673 (S.D.N.Y. 1986) (permitting discovery on issue of whether party changed domicile).

With respect to Strasberg, it must be determined whether she has abandoned a domicile in the United States, and thus is a U.S. citizen domiciled abroad, such that diversity jurisdiction cannot exist under *Cresswell*, 922 F.2d at 68. In his Amended Complaint, Plaintiff alleged that Strasberg "is a U.S. citizen" who has a "last known address" in New Jersey, who is "now living in London, England, UK." (Am. Compl. ¶ 76.) Strasberg does not dispute that, prior to leaving the U.S. in 2013, she was a U.S. citizen residing in the United States. Thus, the Court finds that Plaintiff has met his burden of persuasion regarding Strasberg's initial domicile, *i.e*., in the United States. *See Pacho*, 510 F. Supp. 2d  at 335. Thus, it is now incumbent on Strasberg to prove that she "abandoned" her initial domicile in the United States for a domicile in the United Kingdom. *See id*.

The central question with respect to Strasberg is whether she intends to "remain" in the United Kingdom or return to the United States. *See Palazzo*, 232 F.3d at 42. It is not uncommon for U.S. citizens who are living abroad to intend to return to the United States. *See*, *e.g.*, *Seales v. Panamanian Aviation Co.*, No. 07-CV-02901 (CPS) (CLP), 2009 WL 395821, at *7 (E.D.N.Y. Feb. 18, 2009) (plaintiff denied he intended to make foreign country his "permanent home" and stated "he always intended to return to the United States"), *aff'd*, 356 F. App'x 461 (2d Cir. 2009). As with Carlson, the Court finds that Plaintiff is entitled to some limited discovery before determining whether Strasberg has met her burden of proof. *See Townsend Rabinowitz Pantaleoni & Valente, P.C.*, 109 F.R.D. at 673.

## II.      Scope Of Limited Jurisdictional Discovery

In determining the scope of the limited jurisdictional discovery to permit, the Court is mindful of the need for proportionality; that is, the discovery permitted must be proportional to the current needs of the case. *See Carl v. Edward*s, No. 16-CV-03863 (ADS) (AKT), 2017 WL 4271443, at *9 (E.D.N.Y. Sept. 25, 2017) (court has "duty to ensure, in accordance with Rule 26(b)(1) that the discovery sought by Plaintiff—even in the limited jurisdictional context—is both relevant and proportional in light of the particular facts and circumstances of this case"). Plaintiff already has access to two Declarations from each of Carlson and Strasberg regarding the location of their domicile at the time this action was commenced. The Court, in its discretion, finds that the limited discovery in this case should be narrowly circumscribed and therefore limits such discovery to no more than 15 document requests and 15 interrogatories for each of Carlson and

Strasberg. *See id*. at *2 (limiting jurisdictional discovery to document requests and interrogatories).

Carlson and Strasberg shall be entitled to redact from the documents they produce personally identifiable information, as well as other non-relevant information of a personal or sensitive information (for example, the purchase price of Carlson's home). In addition, in order to protect the legitimate privacy rights of Carlson and Strasberg, the Court shall enter a Protective Order, which will enable Carlson and/or Strasberg to designate documents and interrogatory responses confidential and require them to be filed under seal.

<u>**CONCLUSION**</u>

For the foregoing reasons, Plaintiff's motion for jurisdictional discovery is GRANTED IN PART and DENIED IN PART. Thus, it is hereby ORDERED, as follows:

1) The parties shall meet and confer and file with the Court, no later than October 21, 2020, a proposed Protective Order in the form of the Model Protective Order available at https://cutt.ly/VgoTbt3.

2) No later than October 23, 2020, Plaintiff may serve no more than 15 document requests and no more than 15 interrogatories on each of Carlson and Strasberg.

3) If Defendants object to any document requests and/or interrogatories, they promptly shall so advise Plaintiff in writing and then meet and confer to seek to resolve such objections. If a consensual resolution cannot be reached, a joint letter shall be filed with the Court no later than October 30, 2020, which shall be no longer than five pages in length, setting forth the disputes and the parties' respective positions as to such disputes.

4) No later than November 9, 2020, Defendants Carlson and Strasberg shall respond to Plaintiff's document requests and interrogatories, and produce responsive documents.

5) No later than November 23, 2020, Plaintiff shall file his opposition to the Moving Defendants' motion to dismiss (ECF No. 46). Since Plaintiff's Amended Complaint does allege his domicile at the time this action was commenced,[7] along with his opposition, Plaintiff shall file an affidavit or declaration setting forth his domicile, along with proof establishing such domicile.

6) No later than December 2, 2020, the Moving Defendants shall file their reply.

**SO ORDERED.**

Dated:        New York, New York
             October 14, 2020

_____
STEWART D. AARON
United States Magistrate Judge

---

[7] As set forth above, Plaintiff's Complaint and Amended Complaint only allege his residences, not his domicile. *See Van Buskirk*, 935 F.3d at 54 ("evidence of *residence* is insufficient to establish domicile" (emphasis in original)). Moreover, Plaintiff's domicile in 2015 was New York. (*See* footnote 4, *supra*.) If Plaintiff's domicile still is in New York, then complete diversity would be lacking since the principal place of business of certain of the corporate defendants appears to be in New York. (*See* Am. Compl. ¶¶ 43-44.)