UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED:___11/29/2020___

Steven E. Greer,

                              Plaintiff,

            -against-

Tucker Carlson et al.,

                              Defendants.

1:20-cv-05484 (LTS) (SDA)

**ORDER**

**STEWART D. AARON, UNITED STATES MAGISTRATE JUDGE.**

The Court has received three letters from *pro se* plaintiff Steven E. Greer ("Plaintiff"), which the Court has filed under seal on the ECF docket. First, Plaintiff sent a letter, dated November 23, 2020, in which Plaintiff raises certain issues regarding documents produced by defendant Tucker Carlson ("Carlson"), and requests permission to serve upon Carlson two supplemental interrogatories. (Pl.'s 11/23/20 Ltr., ECF No. 101.) Second, Plaintiff sent a letter, dated November 25, 2020, in which he requests permission to serve upon Carlson an additional four interrogatories (for a total of six supplemental interrogatories). (Pl.'s 11/25/20 Ltr., ECF No. 102.) Third, Plaintiff sent a letter, dated November 27, 2020, in which he replies to certain issues raised in a letter sent to the Court by counsel for Carlson,[1] and requests a "brief extension to the deadline for [his] reply to the motion to dismiss" filed by defendants Carlson and Jennifer Strasburg ("Strasberg"), among other defendants (collectively, the "Moving Defendants"). (Pl.'s 11/27/20 Ltr., ECF No. 103.) This Order resolves the issues raised by Plaintiff in this correspondence.

---

[1] The letter from counsel for Carlson was dated November 27, 2020 and filed on the ECF docket. (Carlson 11/27/20 Ltr., ECF No. 100.)

**BACKGROUND**

In an Opinion and Order, dated October 14, 2020, this Court granted in part Plaintiff's motion for jurisdictional discovery, permitting him to take "limited" and "narrowly circumscribed" discovery by way of serving upon each of Strasburg and Carlson fifteen interrogatories and fifteen document requests. *See Greer v. Carlson*, No. 20-CV-05484 (LTS) (SDA), 2020 WL 6064167, at *6 (S.D.N.Y. Oct. 14, 2020). In an Order, dated October 31, 2020, this Court resolved certain disputes that had arisen between Plaintiff and Defendants Strasberg and Carlson regarding Plaintiff's interrogatories and document requests. *See Greer v. Carlson*, 2020 WL 6382928 (S.D.N.Y. Oct. 31, 2020). In the October 31 Order, the Court rejected certain of Plaintiff's disputed interrogatories addressed to Carlson and modified others. *See id*. at *2-3. In addition, the Court rejected certain of Plaintiff's disputed document requests addressed to Carlson and modified others. *See id*. at *3-4. Request No. 8 was modified to read as follows: "Credit card statements reflecting spending by Carlson in Florida and Maine from January 1, 2020 to October 1, 2020." *See id*. at *4. In addition, the Order provided that "Carlson may redact from these statements personally identifiable information, as well as other non-relevant information of a personal or sensitive nature. *See id*. at *4 n.13.

**ISSUES RAISED BY PLAINTIFF**

I.     **Redactions To Credit Card Statements**

Plaintiff objects to what he believes are excessive redactions to Carlson's credit card statements, asserting that "[Carlson's] lawyer redacted the entire credit card activity in some pages[,] making it impossible for me to trace Carlson's location." (*See* Pl.'s 11/23/20 Ltr. at 1.) I ordered that Carlson submit for my *in camera* review unredacted versions of his credit card

statements (11/23/20 Order, ECF No. 99), which he has done. Based upon my review of the redactions, I make the rulings below:[2]

A. For the following transactions, Carlson shall provide to Plaintiff the nature of the expenditures made (*e.g.*, restaurant, fuel, etc.), since it cannot be ascertained due to the redactions:

1. On production page number CARLSON0040: $37.56 charge on 9/28/20.

2. On production page number CARLSON0041: $61.00 charge on 9/21/20.

3. On production page number CARLSON0044: $19.69 charge on 8/24/20, $18.10 charge on 8/23/20, $12.82 charge on 8/23/20, $214.15 charge on 8/22/20 and $146.87 charge on 8/21/20.

4. On production page number CARLSON0049: $498.00 charge on 6/24/20.

5. On production page number CARLSON0050: $23.29 charge on 6/14/20, $34.41 charge on 6/7/20, $282.23 charge on 6/4/20, $91.80 charge on 6/2/20, $6.82 charge on 6/2/20 and $107.80 charge on 6/1/20.

6. On production page number CARLSON0051: $6.00 charge on 5/31/20, $400.00 charge on 5/29/20, $6.98 charge on 5/28/20, $22.65 charge on 5/28/20, $362.85 charge on 5/27/20, $59.04 charge on 5/23/20, $109.64 charge on 5/22/20, $418.43 charge on 5/21/20 and $2.33 charge on 5/21/20.

---

[2] It is not surprising that large portions of Carlson's credit card statements are redacted, since my Order only called for production of information regarding "spending by Carlson in Florida and Maine." *See Greer*, 2020 WL 6382928, at *4. Thus, the many online transactions contained in the credit card statements, as well as expenditures made by Carlson during travel to other states, properly were redacted by Carlson.

7.  On production page number CARLSON0052: $468.67 charge on 4/24/20, $79.32 charge on 4/15/20, $422.70 charge on 3/25/20, $19.06 charge on 3/17/20, $1,744.46 charge on 3/16/20, $17.04 charge on 3/15/20, $490.85 charge on 3/11/20, $45.05 charge on 3/7/20, $2,023.50 charge on 3/5/20, $386.48 charge on 3/1/20, $40.00 charge on 2/29/20, $71.82 charge on 2/29/20, $156.56 charge on 2/27/20, $75.51 charge on 2/27/20, $133.62 charge on 2/23/20, $511.03 charge on 2/21/20, $2,126.01 charge on 2/20/20 and $63.87 on 2/18/20.

8.  On production page number CARLSON0053, $83.43 charge on 2/18/20, $233.93 charge on 2/17/20, $65.43 charge on 2/17/20, $42.00 charge on 2/15/20, $86.14 charge on 2/15/20, $34.91 charge on 2/14/20, $71.25 on 2/14/20, $46.60 charge on 2/14/20, $62.79 charge on 2/14/20, $175.06 charge on 2/13/20, $216.44 charge on 2/8/20, $115.94 charge on 2/7/20, $130.00 charge on 2/7/20 and $218.00 charge on 2/7/20.

9.  On production page number CARLSON0054, $396.27 charge on 2/4/20.

10. On production page number CARLSON0056, $1,011.75 charge on 1/4/20, $47.85 charge on 1/2/20, $83.39 charge on 1/2/20, $1,794.31 charge on 1/1/20 and $102.03 charge on 1/1/20.

11. On production page number CARLSON0058, $25.06 charge on 9/20/20 and $85.88 charge on 9/13/20.

12. On production page number CARLSON0062, $163.16 charge on 6/2/20.

13. On production page number CARLSON0063, $13.83 charge on 4/11/20 and $45.21 charge on 4/11/20.

14. On production page number CARLSON0064, $64.35 charge on 4/1/10, $390.82 charge on 3/29/20 and $107.67 charge on 3/4/20.

15. On production page number CARLSON0065, $99.49 charge on 2/21/20.

B. For the transactions on 7/7/20 (CARLSON0047), 8/2/20 (CARLSON0045) and 9/2/20 (CARLSON0043), Carlson shall unredact the first name of the business so that Plaintiff may see the nature of the business.[3]

C. For the $86.52 transaction on 8/8/20 (CARLSON0059), Carlson shall unredact the full name of the business to that Plaintiff may see the nature of the business.[4]

## II.  **Licenses**

In his November 23 letter, Plaintiff states that Carlson has failed to provide the "other driver's license[s] that [he] suspect[s] are still in possession of Carlson other than his Florida license." (*See* Pl.'s 11/23/20 Ltr. at 1.) He further states that Carlson's fishing licenses were not produced. (*See id.*) In response, Carlson's counsel states that "Carlson does not possess a driver's license other than the Florida license that he has produced," and that Carlson "does not possess any" fishing licenses. (*See* Carlson 11/27/20 Ltr. at 2-3.) In reply, Plaintiff argues that the statements made by Carlson's counsel "are not admissible and hold no penalty of perjury." (*See* Pl.'s 11/27/20 Ltr. at 1.) Plaintiff is mistaken. Carlson's counsel is admitted to practice in this Court and is an officer of the Court. If a statement made by counsel is false, he can be subject to discipline. Thus, courts often rely upon statements made by counsel. *See Toliver v. Rosbaugh*, No.

---

[3] This will not divulge the precise location where the expenditure was made since this business has multiple locations.

[4] As above, this will not divulge the precise location where the expenditure was made since this business has multiple locations.

16-CV-00263 (RJA) (JJM), 2020 WL 4047474, at *1 (W.D.N.Y. July 20, 2020) ("I have no reason to doubt counsel's representations as an officer of the court, which I am entitled to rely upon."); *ACLI Int'l Commodity Servs., Inc. v. Banque Populaire Suisse*, 110 F.R.D. 278, 283 (S.D.N.Y. 1986) (statement made by counsel "accept[ed] as accurately reflecting the facts since it was made by an officer of the court"); *see also Theodore v. State of N.H.*, 614 F.2d 817, 822 (1st Cir. 1980) "Attorneys are officers of the court and a judge has the right, in most circumstances, to rely on their representations to him.").

In any event, with respect to the issue of driver's licenses, Carlson already has submitted a sworn declaration in which he states that, aside from his Florida driver's license, he has "no other driver's licenses from any other state." (Carlson Supp. Decl., ECF No. 67, ¶ 5.)

III.    **Club Memberships**

Plaintiff's Document Request No. 8 requests "documents, communications, and correspondences concerning Tucker Carlson's local spending on essential goods required to live full-time in Florida and/or Maine, including credit card statements or other forms of receipts that show spending on churches or clubs . . . since January 1, 2019." (*See* Carlson Resps. & Objs., ECF No. 96-2, at 12.) In response to this request, Carlson produced three redacted statements for clubs located in Florida. (*See* CARLSON0067-69.) In his November 23 letter, Plaintiff argues that he cannot "determine whether [the documents reflect] even a real club membership at all, as opposed to a one-time beach fee." (Pl.'s 11/23/20 Ltr. at 2.)

To protect Carlson's privacy, Carlson need not provide unredacted copies of the foregoing statements to Plaintiff. However, the Court shall review the statements produced by Carlson *in camera* to confirm that they evidence Florida club memberships.

## IV.    Carlson's Response To Question Regarding Maine

Plaintiff objects to Carlson's response to the question as to why Maine is not his domicile. (*See* Pl.'s 11/23/20 Ltr. at 3.) However, the Court finds that Carlson's response, including that the property in Maine where he stays is a vacation house (*see* ECF No. 96-1 at 4), is a fair and adequate response.

## V.    New Interrogatories

Plaintiff seeks responses to six additional interrogatories. Each of these interrogatories is untimely, since the deadline for serving interrogatories was October 23, 2020. *See Greer*, 2020 WL 6064167, at *7. However, since the Court previously rejected certain of Plaintiff's interrogatories, the Court shall require Carlson to respond to two additional interrogatories, as set forth below.[5]

Plaintiff's first three proposed supplemental interrogatories are as follows:

**Plaintiff's Proposed Supplemental Interrogatory #1:**

Mr. Carlson, you claim to be domiciled in Florida, which means, among other things, that you have abandoned your former domiciles in New York, DC, and Maine. However, filming from your garage or living room in remote houses by the Everglades or rural Maine prohibits you from having guests in your studio. Do you agree or dispute this assertion?

**Plaintiff's Proposed Supplemental Interrogatory #2:**

If you plan to somehow build a fully-functioning studio in Florida that would allow for guests, how do you plan on achieving this? Specifically, how would you get guests to make the long travels to Florida, among other production obstacles?

---

[5] No further supplemental interrogatories shall be permitted hereafter.

**Plaintiff's Proposed Supplemental Interrogatory #3:**

Why did you move from Washington, DC, where your proper studio was located, to remote Florida?

These three interrogatories appear to the Court to raise the legitimate issue of whether Carlson intends to remain in Florida, or if he intends to return to Washington, D.C., where, according to Plaintiff, Carlson's "proper studio" has been located. Thus, the Court shall require Carlson to answer the following two interrogatories, as modified by the Court:[6]

**Court-Modified Supplemental Interrogatory No. 1:**

Going forward, do you intend to film your live appearances on your weeknight show from Florida, Maine, Washington, D.C. or some other location?

**Court-Modified Supplemental Interrogatory No. 2:**

If you do not intend to film your live appearances on your show from Florida, how do you intend to maintain a domicile in Florida while appearing live on a daily weeknight show?

The remaining supplemental interrogatories are improper or unnecessary, as set forth below:

**Plaintiff's Proposed Supplemental Interrogatory #4:**

Have you looked for housing locations outside of Florida since you bought the Florida house early this year? Please list any real estate agents or real estate websites you might have used.

The Court finds that this interrogatory is not relevant to the issue of Carlson's domicile and seeks to invade his privacy. Thus, Carlson shall not respond to it.

---

[6] If appropriate, Carlson may designate the responses to these interrogatories as confidential pursuant to the Protective Order entered in this case.

**Plaintiff's Proposed Supplemental Interrogatory #5:**

You obtained a Florida driver's license in February of this year. Did you cancel and discard your previous driver's licenses or do you still have them?

Carlson and his counsel already have represented that Carlson has no other driver's licenses. Thus, this interrogatory is not needed.

**Plaintiff's Proposed Supplemental Integratory #6:**

You stated that you have Florida doctors now but provide no other details. You recently had dermatologic surgery on your nose, as is apparent from your TV images. Where was that performed and where is your doctor now who is following that outcome (presumably early skin cancer)?

The Court finds that this interrogatory is not relevant to the issue of Carlson's domicile and seeks to invade his privacy. Thus, Carlson shall not respond to it.

**VI.**   **Extension Of Time**

Plaintiff seeks an extension of time to oppose the Moving Defendants' motion to dismiss. The parties shall meet and confer and seek to agree to an amended briefing schedule for Plaintiff's opposition, as well as the Moving Defendants' reply papers, and submit a proposed schedule to the Court for approval. If the parties cannot agree, they shall submit their counter-proposals to the Court so that the Court can impose its own schedule.

**CONCLUSION**

For the foregoing reasons, within seven days of the date of this Order:

1) Carlson shall provide to Plaintiff the nature of the expenditures for the charges set forth in Section I.A. above;

2) Carlson shall unredact the business names or portions of business names set forth in Sections I.B. and I.C. above;

3) Carlson shall provide for the Court's *in camera* review unredacted versions of the documents with production page numbers CARLSON0067-69, as set forth in Section III above;

4) Carlson shall respond to the two court-modified supplemental interrogatories set forth in Section V above;

5) The parties shall meet and confer and submit a joint letter to the Court regarding the remaining briefing schedule for the Moving Defendants' motion to dismiss, as set forth in Section VI above; and

6) Carlson's counsel shall submit for Court approval redacted versions of Plaintiff's letters filed at ECF Nos. 101, 102 and 103, or shall indicate in a letter to the Court that no redactions are needed as to any particular letter.[7]

**SO ORDERED.**

Dated:         New York, New York
               November 29, 2020

_____
STEWART D. AARON
United States Magistrate Judge

---

[7] Carlson's counsel previously sent an email to the Court objecting to the public filing of certain of Plaintiff's correspondence.