USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: ___6/3/2021___

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

Steven E. Greer,

                                        Plaintiff,

            -against-

Fox Corporation et al.,

                                        Defendants.

1:20-cv-05484 (LTS) (SDA)

**REPORT AND RECOMMENDATION**

**STEWART D. AARON, UNITED STATES MAGISTRATE JUDGE.**

**TO THE HONORABLE LAURA TAYLOR SWAIN, UNITED STATES DISTRICT JUDGE:**

Before the Court are motions by Fox Corporation ("Fox Corp."), Fox News Media ("FNM"), Fox News Network, LLC ("FNN"), Lachlan Murdoch ("Murdoch"), Suzanne Scott ("Scott"), Justin Wells ("Wells"), Charles Gasparino ("Gasparino"), Fox Business Network ("FBN") and Brian Jones ("Jones") (the "Fox News Defendants"); News Corporation ("News Corp."), Dow Jones, The Wall Street Journal ("WSJ") and Gerard Baker ("Baker") (the "News Corp. Defendants"); and Blake Neff ("Neff") (collectively, "Defendants"), pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, to dismiss the Second Amended Complaint ("SAC") filed by *pro* se plaintiff, Steven E. Greer ("Plaintiff" or "Greer"). (Defs.' 4/9/21 Nots. of Mot., ECF Nos. 141, 144.)

For the reasons set forth below, I respectfully recommend that Defendants' motions to dismiss be GRANTED, with leave to replead only his Fourth, Fifth, Sixth and Seventh Causes of Action.

**PROCEDURAL HISTORY**

On July 14, 2020, Plaintiff commenced this action by filing a Complaint asserting a federal copyright infringement claim, as well as six state law claims. (*See* Compl., ECF No. 1.) In his original

Complaint, Plaintiff alleged that he was "the victim of copyright infringement, unfair competition, and misappropriation of 'hot news[,]' as Defendants used [his] original and unique writings for their own television show content, without permission and without giving recognition to [him] as the originator." (*Id*. ¶ 1.) Plaintiff based subject matter jurisdiction on diversity of citizenship, but also asserted jurisdiction predicated upon his federal copyright claim (with attendant supplemental jurisdiction over his state law claims). (*See id*. ¶¶ 85-87.) On July 21, 2020, he filed a "corrected" Complaint alleging the same claims and jurisdictional predicates. (*See* Corrected Compl., ECF No. 6.)

On August 13, 2020, Greer filed an Amended Complaint, which dropped the federal copyright claim[1] and asserted six state law causes of action against sixteen defendants. (*See* Am. Compl., ECF No. 40.) The Amended Complaint based subject matter jurisdiction on diversity of citizenship. (*Id*. ¶ 85.) On September 18, 2020, the Initial Moving Defendants[2] filed their motion to dismiss the Amended Complaint for lack of subject matter jurisdiction. (*See* Defs.' 9/18/20 Not. of Mot., ECF No. 46.) The Initial Moving Defendants argued that two of the Initial Moving Defendants, *i.e.*, Carlson and Strasburg, were nondiverse, such that subject matter jurisdiction did not exist.[3] (*See* Defs.' 9/18/20 Mem. at 1-2.)

---

[1] Plaintiff apparently had failed to obtain a valid registration prior to filing this action. (*See* Pl.'s 1/6/21 Ltr., ECF No. 128, Ex. A at 2.)

[2] The "Initial Moving Defendants" are the defendants who were named in the action at that time and who moved to dismiss the Amended Complaint: Defendants Tucker Carlson ("Carlson"), Fox Corp., FNM, FNN, Murdoch, Scott, Wells, Gasparino, FBN, Jones, News Corp., Dow Jones, WSJ, Baker and Jennifer Strasburg ("Strasberg").

[3] In the Amended Complaint, Greer alleged that he was "a citizen of the United States of America currently living in Florida;" that Carlson "primarily lives" in Washington, D.C., but that Carlson's "current address is actually unknown;" and that Strasberg "is a U.S. citizen" who has a "last known address" in New Jersey, but that "she seems to have been relocated by her employer and is now living in London, England, UK []." (Am. Compl. ¶¶ 6, 18, 76.) However, Carlson asserted in connection with the motion to dismiss that, in

On September 21, 2020, Greer filed a motion for jurisdictional discovery.[4] (Pl.'s 9/21/20 Not. of Mot., ECF No. 52.) By Opinion and Order, dated October 14, 2020, I granted Greer's motion to the extent of permitting him to serve limited written discovery requests with respect to whether Carlson and Strasburg had changed their domiciles. *See Greer v. Carlson*, No. 20-CV-05484 (LTS) (SDA), 2020 WL 6064167, at *6 (S.D.N.Y. Oct. 14, 2020). On October 31, 2020, I issued an Order resolving certain disputes that had arisen regarding those discovery requests. *See Greer v. Carlson*, No. 20-CV-05484 (LTS) (SDA), 2020 WL 6382928 (S.D.N.Y. Oct. 31, 2020). On November 29, 2020, I issued an Order regarding other discovery disputes that had arisen. *See Greer v. Carlson*, No. 20-CV-05484 (LTS) (SDA), 2020 WL 7028922 (S.D.N.Y. Nov. 29, 2020). On December 7, 2020, I issued an Order addressing, among other things, my *in camera* review of certain documents produced by Carlson. *See Greer v. Carlson*, No. 20-CV-05484 (LTS) (SDA), 2020 WL 7183302 (S.D.N.Y. Dec. 7, 2020).

On December 15, 2020, Greer filed his papers in opposition to the Initial Moving Defendants' motion to dismiss the Amended Complaint. (*See* Pl.'s 12/15/20 Opp. Mem., ECF No. 112; Greer 12/15/20 Decl., ECF No. 113.) On December 22, 2020, the Initial Moving Defendants filed their reply papers. (*See* Defs.' 12/22/20 Reply Mem., ECF No. 119; Mintz 12/22/20 Decl., ECF No. 118.) On December 24, 2020, I issued a report and recommendation in which I recommended

---

January 2020, Carlson had changed his domicile from Washington, D.C. to Florida, which is where Greer allegedly is domiciled, such that Carlson is nondiverse. (*See* Defs.' 9/18/20 Mem., ECF No. 50, at 5-7.) Strasberg asserted that she had changed her domicile from the United States to the United Kingdom and that a lawsuit by or against United States citizens domiciled abroad may not be premised on diversity. (*See id*. at 5-6.)

[4] On October 13, 2020, Judge Swain referred the Initial Moving Defendants' motion to dismiss Plaintiff's Amended Complaint to me for a report and recommendation. (*See* 10/13/20 Am. Order of Ref., ECF No. 85.)

that the Initial Moving Defendants' motion to dismiss be granted—because I found that the Court did not have subject matter jurisdiction—but that Plaintiff be granted leave to amend, and on January 28, 2021 my report and recommendation was adopted by Judge Swain. *See Greer v. Carlson*, No. 20-CV-05484 (LTS) (SDA), 2020 WL 8340068, at *6 (S.D.N.Y. Dec. 24, 2020), *report and recommendation adopted*, 2021 WL 293241 (S.D.N.Y. Jan. 28, 2021).

On March 1, 2021, Plaintiff filed his SAC (ECF No. 137), in which he dropped Carlson and Strasburg as defendants, such that there is now complete diversity of citizenship, as the Fox News Defendants and the News Corp. Defendants acknowledge. (*See* F&N Defs.' Mem., ECF No. 143, at 1-2.) On April 9, 2021, the Fox News Defendants, the News Corp. Defendants and Neff moved to dismiss the SAC. (*See* Defs.' 4/9/21 Nots. of Mot.) On April 13, 2021, those motions were referred to me for a report and recommendation. (*See* 4/13/21 Am. Order of Ref., ECF No. 148.) On April 23, 2021, Plaintiff filed his memoranda of law in opposition. (*See* Pl.'s F&N Opp. Mem., ECF No. 149; Pl.'s Neff Opp. Mem., ECF No. 150.) On May 5, 2021, Defendants filed their reply memoranda. (*See* F&N Defs.' Reply Mem., ECF No. 157; Neff Reply Mem., ECF No. 159.)

## BACKGROUND

Greer's 96-page SAC contains 480 paragraphs, includes ten exhibits, and seeks not less than $1 billion in damages, in addition to punitive damages. (*See* SAC at 96.) The following is a summary of the allegations contained in the SAC that relate to the legal claims asserted:[5]

---

[5] In considering the pending motions, the Court "accept[s] as true all factual allegations set forth in the [SAC] and draw all reasonable inferences in favor of the plaintiff. . . . However, this principle is inapplicable to legal conclusions, . . . which . . . are disregarded." *Minden Pictures, Inc. v. Buzzfeed, Inc.*, 390 F. Supp. 3d 461, 466 (S.D.N.Y. 2019) (citations and internal quotation marks omitted).

Greer is "an expert used by TV and radio for interviews." (SAC ¶ 93.) During the period 2008 through 2013, he appeared as a guest on FBN and Fox News.[6] (*See id*. ¶¶ 97-103.) Defendant Gasparino, a reporter for FBN, interviewed Greer and used his news tips. (*See id*. ¶¶ 66, 102.)

In 2012, Greer published several Op-Eds and letters in the WSJ.[7] (SAC ¶ 104.) In December 2012, he approached Dow Jones with an idea about creating a healthcare-related video website as part of the WSJ. (*See id*. ¶ 105.) Greer's idea "never materialized," but the WSJ pursued the idea on its own, without credit or payment to Greer. (*See id*. ¶ 108.) However, Greer never pursued litigation about it. (*See id*.)

From 2010 to 2013, Greer provided news tips to Strasburg, who was a reporter at the WSJ, for articles she wrote about "expert networks." (*See* SAC ¶ 109.) Strasberg never informed her editor about Greer's contributions to the articles and Greer "believes that Strasburg was reprimanded by her bosses" as a result. (*Id*. ¶¶ 112-13.) Greer apparently also believes that Strasburg "smeared" his name with other journalists.[8] (*See id*. ¶¶ 114.)

On March 26, 2013, Greer was invited by Defendant Jones, who then was head of FBN, to be a guest on FBN. (SAC ¶¶ 69, 116.) When Greer arrived at the Fox Corp. headquarters in New

---

[6] Fox Corp. is the parent company of FBN, FNM and FNN. (SAC ¶ 35.) Murdoch is the CEO of Fox Corp. and Scott is the CEO of FNM. (*Id*. ¶¶ 35, 39.)

[7] The WSJ is a newspaper owned by Dow Jones, which is a division of the News Corp. (SAC ¶ 104.) Baker served as Editor-in-Chief of the WSJ between 2013 and 2018 and Deputy Editor-in-Chief between 2009 and 2013. (*Id*. ¶ 78.)

[8] The SAC does not affirmatively allege that Strasberg did this, but alleges instead, as follows: "On April 11, 2012, Plaintiff called Strasburg at work to ask whether she had been responsible for smearing Plaintiff's name with other journalists he had worked well with, such as Alicia Mundy. Strasburg failed to deny the accusation." (SAC ¶ 114.)

York City, the security desk in the lobby would not let him pass. (*See id*. ¶ 116.) According to the SAC, "[t]he [security desk] employees were clearly reading some sort of warning message on their computer screen that cautioned against allowing Plaintiff through."[9] (*See id*.) However, after Greer called Jones, he was cleared through security and filmed the FBN segment. (*See id*.)

Greer believes that his "promising media career" was "shut down by Defendants around 2013." (SAC ¶ 226.) He alleges that this "[b]lacklisting by Defendants is the most reasonable explanation" for what transpired. (*Id*. ¶ 227.)

Commencing in 2017, Greer "suspected" that Carlson was misappropriating Greer's written work and using it on Carlson's Fox News show. (SAC ¶¶ 228-29.) For example, in 2019 and 2020, Carlson used the term "Demimplosion" on his show, in circumstances where Greer previously had coined the term "Demplosion." (*See id*. ¶¶ 294, 296, 303.) In 2019, Carlson "used the words 'civil war' to describe the national unrest," in circumstances where Greer previously had made the "the novel analogy that the partisan division in the country was actually like a second civil war." (*See id*. ¶¶ 305, 307.) In 2021, Greer provided news tips to Carlson about the nursing home scandal engulfing Governor Cuomo, but Carlson never gave Greer "due credit for being the person who exposed" the scandal. (*See id*. ¶¶ 252-53, 260.)

Defendant Wells, a producer of Carlson's show, was "complicit" in Carlson's conduct. (SAC ¶ 230.) Defendant Neff was Carlson's senior show writer until July 13, 2020. (*Id*. ¶ 30.)

At some point after March 2019, Plaintiff mailed his book *Rules to Stop Radicals* to Jones, Gasparino and Charles Payne at the Fox Corp. building. (*See* SAC ¶¶ 140, 143.) Plaintiff learned

---

[9] The SAC nowhere alleges the actual content of the message that purportedly was on the computer screen.

from the building mail room security that packages are not delivered to on-air talent unless they approve the shipment. (*See id.* ¶ 143.) However, "no one at Fox acknowledged receiving [the books]." (*Id.*) Thus, according to the SAC, "[t]he books were either never authorized to get past the mail room or they were received by the recipients and those Fox employees lied to Plaintiff about not receiving them." (*Id.*)

On June 6, 2020, Plaintiff emailed Defendant Gasparino to criticize him for insinuating then-President Trump "had committed a crime in manipulating economic data." (*See* SAC ¶ 137.) The same day, the following exchange of emails ensued:

> Gasparino: "I never reported on that but tell me what's the weather like in Russia? Now I'm sending [t]his email to the FBI
>
> Every harassing email you send me goes to my lawyer and the fbi and yes i will sue you for defamation, Comrade"
>
> Greer: "I demand that you have these likely fictional lawyers contact me, and I am forwarding this to real FBI to make sure they know you are using their name. The last time you threatened me I demanded they contact me and you never did. Speaking of defamation, what does the Russia comment you made mean?"
>
> Greer: "The fact that you think the real FBI (not some ex-FBI who is a Fox contributor) would lift a finger to protect a nobody working on a small cable channel few people watch is mind boggling. This goes to my point about your delusions of grandeur. It is like you are a small boy dreaming up things from a comic book."
>
> Gasparino: "I'm going to sue you for slander and report you to the fbi which i have been covering for years dummy Enjoy golf!"
>
> Gasparino: "Btw why are you banned from the fox building? Who got you banned? Wasn't me. Did you stalk someone else? That's why the fbi is involved"

(SAC ¶ 137 (emphasis omitted).)

The SAC contains eight causes of action: (1) Unfair Competition by Misappropriation (First Cause of Action) (SAC ¶¶ 356-69); Unjust Enrichment (Second Cause of Action) (*id.* ¶¶ 370-87);

Misappropriation of "Hot News" (Third Cause of Action) (*id*. ¶¶ 388-402); Defamation (Fourth Cause of Action) (*id*. ¶¶ 403-19); Tortious Interference with Contractual Relations (Fifth Cause of Action) (*id*. ¶¶ 420-32); Tortious Interference with Prospective Economic Advantage (Sixth Cause of Action) (*id*. ¶¶ 433-58); Intentional Infliction of Emotional Distress (Seventh Cause of Action) (*id*. ¶¶ 459-68); Violation of Cal. Bus. & Prof. Code § 17200 *et seq*. (Eighth Cause of Action). (*Id*. ¶¶ 469-80.)

## LEGAL STANDARDS

### I.      Rule 12(b)(6)

To survive a motion to dismiss for failure to state a claim upon which relief can be granted under Rule 12(b)(6) of the Federal Rules of Civil Procedure, a complaint must "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). The Court "must accept as true all of the [factual] allegations contained in [the] complaint[,]" but "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* (citation omitted).

The Court is mindful that a *pro se* plaintiff's pleadings should be held "to less stringent standards than formal pleadings drafted by lawyers[.]" *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam) (quoting *Estelle v. Gamble*, 429 U.S. 97, 111 n.5 (1976)). District courts should read the pleadings of a *pro se* plaintiff liberally and interpret them "to raise the strongest arguments they suggest."[10] *McPherson v. Coombe*, 174 F.3d 276, 280 (2d Cir. 1999) (citation omitted).

---

[10] Although the Court has liberally construed the SAC, due to Plaintiff's *pro se* status, the Court notes Plaintiff's allegation that he "is an experienced federal litigator, having won motions in courts ranging from the district court level to the Supreme Court of the United States." (SAC ¶ 8.)

II.     **Copyright Preemption**

"Section 301 of the Copyright Act preempts state law actions that seek to vindicate rights equivalent to those protected under the Copyright Act." *Transcience Corp. v. Big Time Toys, LLC*, 50 F. Supp. 3d 441, 453 (S.D.N.Y. 2014) (citing 17 U.S.C. § 301(a); *Berry v. Deutsche Bank Tr. Co. Ams.*, No. 07-CV-07634 (WHP), 2008 WL 4694968, at *6 (S.D.N.Y. Oct. 21, 2008)). "The Copyright Act preempts claims when: [i] the particular work to which the claim is being applied falls within the type of works protected by the Copyright Act, and [ii] the claim seeks to vindicate legal or equitable rights that are equivalent to one of the bundle of exclusive rights already protected by copyright law." *Id*. (citing *Berry*, 2008 WL 4694968, at *6).

"In order for a state cause of action to survive preemption, it must have an extra element beyond reproduction, preparation of derivative works, distribution, performance or display, which changes the nature of the action so that it is qualitatively different from a copyright infringement claim." *Transcience Corp.*, 50 F. Supp. 3d at 453 (emphasis omitted) (internal quotation marks omitted) (quoting *Gusler v. Fischer*, 580 F. Supp. 2d 309, 316 (S.D.N.Y. 2008)). Courts in the Second Circuit "take a restrictive view of what extra elements transform an otherwise equivalent claim into one that is qualitatively different from a copyright infringement claim." *Briarpatch Ltd. v. Phoenix Pictures, Inc.*, 373 F.3d 296, 306 (2d Cir. 2004); *see also Nat'l Basketball Ass'n v. Motorola, Inc.*, 105 F.3d 841, 851 (2d Cir. 1997) ("[T]he 'extra element' test should not be applied so as to allow state claims to survive preemption easily.").

III.    **Defamation**

"To state a claim for defamation under New York Law, the plaintiff must allege (1) a false statement about the plaintiff; (2) published to a third party without authorization or privilege; (3)

through fault amounting to at least negligence on [the] part of the publisher; (4) that either constitutes defamation per se or caused 'special damages.'" *Gargiulo v. Forster & Garbus, Esqs*., 651 F. Supp. 2d 188, 192 (S.D.N.Y. 2009) (citation omitted).

## IV.   Tortious Interference With Contractual Relations And Prospective Economic Advantage

"Under New York law, the elements of tortious interference with contract are (1) 'the existence of a valid contract between the plaintiff and a third party'; (2) the 'defendant's knowledge of the contract'; (3) the 'defendant's intentional procurement of the third-party's breach of the contract without justification'; (4) 'actual breach of the contract'; and (5) 'damages resulting therefrom.'" *Kirch v. Liberty Media Corp*., 449 F.3d 388, 402 (2d Cir. 2006) (citing *Lama Holding Co. v. Smith Barney Inc*., 88 N.Y.2d 413, 424 (1996)).

"Under New York law, to state a claim for tortious interference with prospective economic advantage, the plaintiff must allege that '(1) it had a business relationship with a third party; (2) the defendant knew of that relationship and intentionally interfered with it; (3) the defendant acted solely out of malice, or used dishonest, unfair, or improper means; and (4) the defendant's interference caused injury to the relationship.'" *Kirch*, 449 F.3d at 400 (citing *Carvel Corp. v. Noonan*, 350 F.3d 6, 17 (2d Cir. 2003).

## V.   Intentional Infliction of Emotional Distress ("IIED")

The elements of a cause of action for IIED are: "(i) extreme and outrageous conduct; (ii) intent to cause, or disregard of a substantial probability of causing, severe emotional distress; (iii) a causal connection between the conduct and injury; and (iv) severe emotional distress." *Howell v. New York Post Co*., 81 N.Y.2d 115, 121 (1993). "Under New York law, a claim for intentional infliction of emotional distress must satisfy an 'exceedingly high legal standard.'" *DiRuzza v.*

*Lanza*, 685 F. App'x 34, 36 (2d Cir. 2017) (quoting *Chanko v. Am. Broad. Cos. Inc.*, 27 N.Y.3d 46, 57 (2016)); *see also Howell*, 81 N.Y.2d at 122 ("[O]f the intentional infliction of emotional distress claims considered by this Court, every one has failed because the alleged conduct was not sufficiently outrageous."). First, the tort "may be invoked only as a last resort, to provide relief in those circumstances where traditional theories of recovery do not." *Salmon v. Blesser*, 802 F.3d 249, 256 (2d Cir. 2015) (citation and quotation marks omitted). Second, a party alleging intentional infliction must plead and prove conduct "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, [so as] to be regarded as atrocious, and utterly intolerable in a civilized community[.]" *Chank*o, 27 N.Y.3d at 56 (citation and quotation marks omitted).

## DISCUSSION

### I. Plaintiff's First, Second, Third And Eighth Causes Of Action Are Preempted

#### A. First Cause Of Action (Unfair Competition)

In the SAC, Plaintiff alleges with respect to his unfair competition claim that the Fox News Defendants and the News Corp. Defendants engaged in unfair competition by misappropriating "Plaintiff's works," including his "original and nonobvious news stories" and his books. (*See* SAC ¶¶ 358-64, 366-69.) The two elements required for copyright preemption are present here: (1) "the particular work to which the claim is being applied falls within the type of works protected by the Copyright Act," and (2) "the claim seeks to vindicate legal or equitable rights that are equivalent to one of the bundle of exclusive rights already protected by copyright law." *See Transcience Corp.*, 50 F. Supp. 3d at 453. First, the works fall within the type of works protected

by the Copyright Act, since they are "original works of authorship fixed in [a] tangible medium of expression." *See* 17 U.S.C. § 102.[11]

Second, the unfair competition claim seeks to vindicate Plaintiff's legal rights equivalent to the exclusive rights protected by copyright law. "Under New York law,[12] unfair competition includes 'taking the skill, expenditures and labors of a competitor,' as well as 'misappropriat[ing] for the commercial advantage of one person . . . a benefit or property right belonging to another.'" *Broker Genius Inc. v. Gainor*, 810 F. App'x 27, 31 (2d Cir. 2020) (alteration in original) (quoting *Roy Exp. Co. Establishment of Vaduz v. Columbia Broad. Sys., Inc.*, 672 F.2d 1095, 1105 (2d Cir. 1982)); *see also Jacino v. Ill. Tool Works Inc.*, No. 16-CV-01704 (BMC), 2017 WL 4480752, at *5 (E.D.N.Y. Oct. 6, 2017) ("The essence of unfair competition under New York common law is

---

[11] Plaintiff certainly believed his works fell within the type of works protected by the Copyright Act, since his initial Complaint and Corrected Complaint both contained copyright claims. (*See* Compl. ¶¶ 252-58; Corrected Compl. ¶¶ 252-58.) While Plaintiff now argues that his claims cannot be preempted because he "accuses Defendants of misappropriating his ideas, concepts, and discoveries, which are not protected by copyright law" (Pl.'s F&N Opp. Mem. at 5), courts have rejected the sort of "partial preemption doctrine" that Plaintiff is proposing—*i.e.*, "preemption of claims based on misappropriation of [expression] but no preemption of claims based on misappropriation of underlying [non-copyrightable material]." *Nat'l Basketball Ass'n v. Motorola, Inc.*, 105 F.3d 841, 849 (2d Cir. 1997). This is because "Congress, in extending copyright protection only to the [expression] and not to the underlying [material], intended that the latter be in the public domain," and "[p]artial preemption turns that intent on its head by allowing state law to vest exclusive rights in material that Congress intended to be in the public domain and to make unlawful conduct that Congress intended to allow." *Id.*

[12] In determining which state law will apply, a federal court utilizes the conflict of law rules from the state in which it sits. *See Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496 (1941). In the present case, the alleged unlawful conduct occurred in New York, where Fox Corp. and News Corp. are located. *See Alan L. Frank L. Assocs., P.C. v. OOO RM Inv.*, No. 17-CV-01338 (NGG) (ARL), 2020 WL 7249439, at *9 (E.D.N.Y. Mar. 2, 2020), *report and recommendation adopted*, 2020 WL 7022317 (E.D.N.Y. Nov. 30, 2020) (applying law of place of tort). In any event, under New York choice-of-law analysis, the first step is to determine whether there exists an actual conflict between the relevant laws of the jurisdictions at issue. *See Schwartz v. Liberty Mut. Ins. Co.*, 539 F.3d 135, 151 (2d Cir. 2008). The Fox News Defendants and the News Corp. Defendants argue for the application of New York law. (*See* F&N Defs.' Mem. at 4, 22, 28.) Although Plaintiff alleges in the SAC that the Court "has leeway to use common law and statutes from multiple states" (SAC ¶ 357), he does not allege that the relevant law of any states differs from New York law.

the bad faith misappropriation of the labors and expenditures of another, likely to cause confusion or to deceive purchasers as to the origins of the goods." (quoting *Jeffrey Milstein, Inc. v. Greger, Lawlor, Roth, Inc.*, 58 F.3d 27, 34 (2d Cir. 1995))). There are no extra elements required for Plaintiff's unfair competition claim than would be required for a copyright infringement claim.

Thus, "[f]ollowing [the] 'extra element' test, [the Second Circuit has] held that unfair competition and misappropriation claims grounded solely in the copying of a plaintiff's protected expression are preempted by section 301." *Computer Assocs. Int'l, Inc. v. Altai, Inc.*, 982 F.2d 693, 717 (2d Cir. 1992); *see also Integrative Nutrition, Inc. v. Acad. of Healing Nutrition*, 476 F. Supp. 2d 291, 297 (S.D.N.Y. 2007) ("The Copyright Act preempts unfair competition and misappropriation claims 'grounded solely in the copying of a plaintiff's protected expression.'" (quoting *Kregos v. Associated Press*, 3 F.3d 656, 666 (2d Cir. 1993)).

**B.      Second Cause Of Action (Unjust Enrichment)**

Plaintiff alleges with respect to his unjust enrichment claim that Plaintiff provided Defendants with his "valuable creative content with expectations of being rewarded by credit for his work and payment" and that Defendants benefited from his misappropriated work. (*See* SAC ¶¶ 374-81.) This claim also is preempted. Again, the works in question fall within the type of works protected by the Copyright Act. In addition, the unjust enrichment claim seeks to vindicate Plaintiff's legal rights equivalent to the exclusive rights protected by copyright law.

A claim for unjust enrichment under New York law requires a plaintiff to allege that "[i] defendant was enriched; [ii] at plaintiff's expense; and [iii] equity and good conscience militate against permitting defendant to retain what plaintiff is seeking to recover." *Diesel Props S.r.l. v. Greystone Bus. Credit II LLC*, 631 F.3d 42, 55 (2d Cir. 2011) (internal quotation marks omitted).

Where, as here, "the gravamen of an unjust enrichment claim is that defendants 'unjustly benefitted from unauthorized use' of a work within the scope of the Copyright Act . . . the claim is preempted*." Stanacard, LLC v. Rubard, LLC*, No. 12-CV-05176 (CM), 2016 WL 462508, at *22 (S.D.N.Y. Feb. 3, 2016) (quoting *Einiger v. Citigroup, Inc.*, No. 14-CV-04570 (GHW), 2014 WL 4494139, at *6 (S.D.N.Y. Sept. 12, 2014)); *see also Panizza v. Mattel, Inc.*, No. 02-CV-07722 (GBD), 2003 WL 22251317, at *4 (S.D.N.Y. Sept. 30, 2003) ("The overwhelming majority of courts in this [C]ircuit have held that an unjust enrichment claim based upon the copying of subject matter within the scope of the Copyright Act is preempted." (quoting *Boyle v. Stephens Inc.*, No. 97-CV-01351 (SAS), 1998 WL 690816, at *5-6 (S.D.N.Y. Sept. 29, 1998))). Once again, there are no extra elements required for Plaintiff's unjust enrichment claim than would be required for a copyright infringement claim.

### C.   Misappropriation Of "Hot News" (Third Cause Of Action)

With his Third Cause of Action, Plaintiff seeks to circumvent copyright preemption by asserting that his works were "hot news." (*See* SAC ¶¶ 391-96.) However, Plaintiff has not plausibly alleged the "narrow 'hot-news' misappropriation claim [that] survives preemption for actions concerning material within the realm of copyright." *See Nat'l Basketball Ass'n v. Motorola, Inc.*, 105 F.3d 841, 852 (2d Cir. 1997) (footnote omitted) (hereinafter, *NBA*); *see also Barclays Cap. Inc. v. Theflyonthewall.com, Inc.*, 650 F.3d 876, 897 (2d Cir. 2011) (referring to "the 'narrow' 'hot news' misappropriation exemption from preemption").

In *International News Service v. Associated Press*, 248 U.S. 215 (1918) (hereinafter, *INS*), the Supreme Court established what is now known as "hot news" misappropriation. In that case, plaintiff, Associated Press ("AP"), and defendant, International News Service ("INS"), were both

in the news wire business in which they competed to gather and distribute news to member newspapers. *See id*. at 221. INS would lift factual stories from AP bulletins and send them by wire to INS papers. *See id*. at 231. INS also would take factual stories from east coast AP papers and wire them to INS papers on the west coast that had yet to publish because of time differentials. See id. at 238. The Supreme Court held that INS's conduct was a common law misappropriation of AP's property. *Id*. at 242.[13]

The provisions of the Copyright Act preempting state law claims that enforced rights "equivalent" to exclusive copyright protections were added by amendments enacted in 1976. *See* 17 U.S.C. § 301. "Based on legislative history of the 1976 amendments, it is generally agreed that a 'hot-news' *INS*-like claim survives preemption."[14] *NBA*, 105 F.3d at 845. In *NBA*, the Second Circuit stated "that the surviving 'hot-news' *INS*-like claim is limited to cases where: (i) a plaintiff generates or gathers information at a cost; (ii) the information is time-sensitive; (iii) a defendant's use of the information constitutes free riding on the plaintiff's efforts; (iv) the defendant is in direct competition with a product or service offered by the plaintiffs; and (v) the ability of other parties to free-ride on the efforts of the plaintiff or others would so reduce the incentive to produce the product or service that its existence or quality would be substantially threatened."[15]

---

[13] *INS* thus purported to establish a principle of federal common law of misappropriation. However, "the law established by *INS* was abolished by *Erie Railroad Co. v. Tompkins*, 304 U.S. 64 . . . (1938), which largely abandoned federal common law." *Barclays*, 650 F.3d at 894.

[14] Due to the *NBA* Court using *INS* "as a description of the type of claims—'*INS*-like'—that, Congress has said, are not necessarily preempted by federal copyright law," the Second Circuit has noted that "[s]ome seventy-five years after its death under *Erie*, *INS* thus maintains a ghostly presence as a description of a tort theory, not as precedential establishment of a tort cause of action." *Barclays*, 650 F.3d at 894.

[15] Although this five-part test, like the other similar tests articulated in *NBA* are dicta, the Second Circuit subsequently has treated the test as "stating the elements of the tort" and has applied the *NBA* analysis.

*Id*. To satisfy the second element, a plaintiff "must allege not only that the news was time-sensitive when it was gathered, but that it was time-sensitive when it was misappropriated." *See BanxCorp v. Costco Wholesale Corp*., 723 F. Supp. 2d 596, 612 (S.D.N.Y. 2010) (citing *NBA*, 105 F.3d at 853).

In the present case, Plaintiff has not met the elements of an *INS*-like "hot news" misappropriation claim. First, he has not plausibly alleged that he gathers information at a cost to himself. Unlike AP, the plaintiff in *INS*, which gathered news through its individual members, "who [were] either proprietors or representatives of about 950 daily newspapers published in all parts of the United States," at a cost in 1918 of $3.5 million per annum, *see INS*, 248 U.S. at 221, Plaintiff is a medical doctor in private practice who takes time away from his "day jobs" to create what he refers to as "citizen journalism." (*See* SAC ¶¶ 7, 397.) Second, he has not plausibly alleged that the information that purportedly was misappropriated was time-sensitive both when it was gathered and when it was misappropriated. In his opposition memorandum, Plaintiff recognizes the "time lag" between his reporting and the purported misappropriation and argues that "there is no expiration date for hot news." (*See* Pl.'s F&N Opp. Mem. at 22.) Regardless of the merit of that argument, Plaintiff has not properly pled the time-sensitive element of an *INS*-like claim. Third, Plaintiff has not plausibly alleged that he is in direct competition with Defendants. Unlike the parties in *INS*, who were in the business of "gathering and distribution of news and its publication for profit in newspapers throughout the United States," and who were "in the keenest competition between themselves," *see INS*, 248 U.S. at 221, 230, the parties here are

---

*See Barclays*, 650 F.3d at 900-01 (citing *ConFold Pac., Inc. v. Polaris Indus., Inc.*, 433 F.3d 952, 960 (7th Cir. 2006)).

not in direct competition with one another. While the defendant news organizations in this case are in the business of 24/7 news reporting, Plaintiff is by his own account a solo citizen journalist.

Fourth, Plaintiff has not plausibly alleged that "the ability of other parties to free-ride on [his efforts] would so reduce the incentive to produce the product or service that its existence or quality would be substantially threatened." *NBA*, 105 F.3d at 845. By Plaintiff's own account, he was able to successfully disseminate his material via various media; for example, according to his pleadings, he was the first—and, for over six weeks, the sole—media persona providing his particular take on Governor Cuomo's conduct, both online and on various radio shows. (*See* SAC ¶¶ 232-41.) This is a far cry from the circumstances of *INS*, in which INS's wrongful practices caused "pirated news to be placed in the hands of [INS's] readers sometimes *simultaneously* with the service of competing Associated Press papers, *occasionally even earlier*." INS, 248 U.S. at 238-39 (emphasis added). Moreover, to the extent Plaintiff is concerned that Defendants' "free-rid[ing]" threatens the "existence or quality" of his own work, his own pleadings suggest a potential solution, the insufficiency of which he does not plead: He could cease voluntarily passing news tips to Defendants. (*See, e.g.*, SAC ¶¶ 109, 123, 252, 393.) Since Plaintiff has not plausibly met the elements of a "hot news" misappropriation claim, his Third Cause of Action should be dismissed.

### D.    Cal. Bus. & Prof. Code § 17200 (Eighth Cause Of Action)

Plaintiff alleges in his Eighth Cause of Action that Defendants violated Section 17200 of the California Business and Professions Code "by engaging in the fraudulent business acts and practices of misappropriating Plaintiff's works and portraying to their viewers and readers as their own work." (*See* SAC ¶ 476 (emphasis omitted).) This claim is subject to copyright

preemption. As set forth in Discussion Section I.A., *supra*, the works in question fall within the type of works protected by the Copyright Act. In addition, the Section 17200 claim seeks to vindicate Plaintiff's legal rights equivalent to the exclusive rights protected by copyright law. Where, as here, a plaintiff brings an unfair competition claim under Section 17200 based upon the unauthorized use of a work within the scope of the Copyright Act, such claim is preempted. *See Kodadek v. MTV Networks, Inc.*, 152 F.3d 1209, 1213 (9th Cir. 1998); *accord Intrinsic Sys., LLC v. Lowry*, No. 16-CV-09450 (SJO), 2017 WL 10402609, at *3 (C.D. Cal. Dec. 21, 2017).

II.     **Plaintiff's Defamation Claim (Fourth Cause Of Action) Should Be Dismissed**

Plaintiff's Fourth Cause of Action for defamation is premised upon the 2013 incident at the security desk—when his entry into the Fox Corp. building was delayed, purportedly on the basis of information contained on a computer screen—as well as upon statements purportedly made by Strasburg and Gasparino. (*See* SAC ¶¶ 407, 412-13, 415.) However, Plaintiff has not pled his defamation claim with the requisite particularity.

"A plaintiff must plead the defamatory statements with some particularity." *Alvarado v. Mount Pleasant Cottage Sch. Dist.*, 404 F. Supp. 3d 763, 790 (S.D.N.Y. 2019) (citing N.Y. C.P.L.R. 3016(a)). "Under Fed. R. Civ. P. 8's liberal pleading standards, this requires a plaintiff to 'identify the allegedly defamatory statements, the person who made the statements, the time when the statements were made, and the third parties to whom the statements were published.'" *Id.* (citing *Neal v. Asta Funding, Inc.*, 13-CV-02176 (VB), 2014 WL 3887760, at *3 (S.D.N.Y. June 17, 2014). Plaintiff has not pled the precise statements that he contends were made about him (and

in some cases the persons to whom they were made and/or when they were made) and thus his defamation claim should be dismissed.[16]

## III.   Plaintiff's Tortious Interference Claims (Fifth And Sixth Causes Of Action) Should Be Dismissed

In his Fifth Cause of Action, Plaintiff alleges that he had contracts with WABC Radio and Rudy Giuliani ("Giuliani") and that Defendants somehow caused the breach of those contracts. (*See* SAC ¶¶ 424-25, 427.) However, he has failed to plead essential elements of a tortious interference with contract claim. Specifically, he has not pled that Defendants were aware of any contracts that Plaintiff may have had with WABC Radio and/or Giuliani and/or that Defendants intentionally procured the breach of such contracts. *See Kirch*, 449 F.3d at 402.

In his Sixth Cause of Action, Plaintiff alleges that, if he did not have a contract with WABC Radio or Giuliani, then Defendants interfered with his "prospective economic advantage" with them. (*See* SAC ¶ 436.) Plaintiff also alleges his belief that other "prospective business contract relationships were sabotaged," including relationships with One America News Network ("OANN") and Newsmax. (*See id*. ¶¶ 437-46.) However, Plaintiff has failed to plead essential elements of a tortious interference with business relationships claim. Specifically, he has not properly pled that Defendants were aware of his prospective relationships[17] and intentionally

---

[16] The Court notes that, in the same exchange of emails where Gasparino states he will be reporting Plaintiff to the FBI, Plaintiff stated that Plaintiff would be "forwarding [the emails] to real FBI to make sure they know you are using their name," and also that "[t]he fact that you think the real FBI (not some ex-FBI who is a Fox contributor) would lift a finger to protect a nobody working on a small cable channel few people watch is mind boggling." (*See* SAC ¶ 137.) This suggests that Plaintiff did not believe that Gasparino actually was (or would be) forwarding anything to the FBI.

[17] Plaintiff's allegation that the "Fox Defendants likely knew that Plaintiff was working with OANN" (SAC ¶ 440) is speculative and is not sufficiently pled. Nor is Plaintiff's conjecture that, because there is a "nexus of former Fox employees, who are numerous now at Newsmax, and [the] Fox Defendants, the contract between Plaintiff and Newsmax was known to [the] Fox Defendants." (*See id*. ¶ 446 (emphasis omitted).)

interfered with them. *See Kirch*, 449 F.3d at 400. Nor are there plausible allegations that, even if they were so aware, Defendants acted solely out of malice, or used dishonest, unfair or improper means to interfere. *See id.*

Accordingly, Plaintiff's Fifth and Sixth Causes of Action should be dismissed.

## IV.    Plaintiff's IIED Claim (Seventh Cause Of Action) Should Be Dismissed

In his Seventh Cause of Action, Plaintiff alleges that Gasparino made threats to him by email regarding the FBI, that Plaintiff's "name had been placed in the security computer system for the lobby staff to be warned about him if he entered the building," and that his "books were not allowed past the mail room security screening process," causing him emotional distress. (*See* SAC ¶¶ 462-63, 467.) Plaintiff has not met the "exceedingly high legal standard" to state an IIED claim. *DiRuzza*, 685 F. App'x at 36. The conduct alleged by Plaintiff does not meet the required element of extreme and outrageous conduct. The incidents relating to building security and Plaintiff's books are petty slights, not outrageous conduct. Moreover, the alleged threats regarding the FBI also do not rise to the requisite level of conduct.[18] *See Matthaus v. Hadjedj*, 148 A.D.3d 425, 425-26 (1st Dep't 2017) ("[P]laintiff's factual allegation that defendant made false statements to the police, causing her arrest and incarceration, was insufficient as a matter

---

Nor is Plaintiff's conjecture that, because "Fox Defendants work closely with both WABC radio and Giuliani," Defendants were aware of the prospective business relationships between Plaintiff and WABC Radio and/or Giuliani. (*See id.* ¶ 426.) In order to state a claim, "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555.

[18] In this regard, Plaintiff's apparent disbelief that Gasparino actually was (or would be) forwarding anything to the "real FBI" (*see supra* note 16) further undermines Plaintiff's IIED claim.

of law to constitute extreme and outrageous behavior to sustain the claim." (citation omitted)). Thus, Plaintiff's Seventh Cause of Action should be dismissed.[19]

## V.    Leave to Amend

"There is a strong preference for allowing plaintiffs to amend inadequate pleadings." *In re Bear Stearns Cos., Inc. Secs., Derivative, & ERISA Litig.*, No. 08-MDL-01963 (RWS), 2011 WL 4357166, at *2 (S.D.N.Y. Sept. 13, 2011). This is particularly true if the plaintiff has not had the benefit of a court ruling with respect to the deficiencies of his pleading. *See Loreley Fin. (Jersey) No. 3 Ltd.  v. Wells Fargo Secs., LLC*, 797 F.3d 160, 190 (2d Cir. 2015) ("Without the benefit of a ruling, many a plaintiff will not see the necessity of amendment or be in a position to weigh the practicality and possible means of curing specific deficiencies."). Moreover, a *pro se* complaint should not be dismissed "without granting leave to amend at least once when a liberal reading of the complaint gives any indication that a valid claim might be stated." *Shomo v. City of New York*, 579 F.3d 176, 183 (2d Cir. 2009) (citation omitted). Accordingly, although it is a close call, I respectfully recommend that Plaintiff be granted leave to amend with respect to Plaintiff's Fourth, Fifth, Sixth and Seventh Causes of Action.[20]

Plaintiff, however, should not be given leave to replead his First, Second, Third and Eighth Causes of Action since they are preempted. Where, as here, a plaintiff's claims clearly are preempted by federal law, a court need not grant leave to amend. *See Myrieckes v. Woods*, No.

---

[19] Given that I am recommending that each of the claims contained in the SAC be dismissed in their entirety, I do not address Defendants' arguments that certain portions of Plaintiff's claims are time-barred or Plaintiff's counter-arguments thereto.

[20] If leave is granted by the District Court for Plaintiff to file a further amended pleading, Plaintiff should take care to allege specific facts that allege a basis for liability as to each of the named Defendants, as the SAC, as drafted, does not adequately state claims as to many Defendants.

08-CV-04297 (GBD) (THK), 2009 WL 884561, at *7 (S.D.N.Y. Mar. 31, 2009) (finding that amendment would be futile where there was no way for plaintiff to avoid preemption of state law claims under Copyright Act).

## CONCLUSION

For the foregoing reasons, I respectfully recommend that Defendants' motions to dismiss be GRANTED. I also recommend that Plaintiff be given leave to replead only his Fourth, Fifth, Sixth and Seventh Causes of Action, but not his other causes of action.

The Clerk of Court is respectfully directed to mail a copy of this Report and Recommendation to the *pro se* Plaintiff.

**SO ORDERED.**

DATED:      New York, New York
            June 3, 2021

                                        _____
                                        STEWART D. AARON
                                        United States Magistrate Judge

                    *              *              *

**NOTICE OF PROCEDURE FOR FILING OBJECTIONS TO THIS REPORT AND RECOMMENDATION**

The parties shall have fourteen (14) days (including weekends and holidays) from service of this Report and Recommendation to file written objections pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure. *See also* Fed. R. Civ. P. 6(a), (d) (adding three additional days when service is made under Fed. R. Civ. P. 5(b)(2)(C), (D) or (F)). A party may respond to another party's objections within fourteen days after being served with a copy. Fed. R. Civ. P. 72(b)(2). Such objections, and any response to objections, shall be filed with the

Clerk of the Court. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(d), 72(b). Any requests for an extension of time for filing objections must be addressed to Chief Judge Swain.

**THE FAILURE TO OBJECT WITHIN FOURTEEN (14) DAYS WILL RESULT IN A WAIVER OF OBJECTIONS AND WILL PRECLUDE APPELLATE REVIEW.** *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(d), 72(b); *Thomas v. Arn,* 474 U.S. 140 (1985).