UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------x

STEVEN E. GREER,

        Plaintiff,

-v-                                                            No.  20-CV-5484-LTS-SDA

FOX CORPORATION, et al.,

        Defendants.

-------------------------------------------------------x

### MEMORANDUM ORDER ADOPTING REPORT AND RECOMMENDATION IN PART

        Before the Court are objections to the Report and Recommendation of Magistrate Judge Aaron, dated June 3, 2021.  (Docket entry no. 160 (the "Report").)  Objections have been filed by both Plaintiff Steven Greer ("Plaintiff" or "Greer") and Defendants Fox Corporation, Fox News Media, Fox News Network, LLC, Lachlan Murdoch, Suzanne Scott, Justin Wells, Charles Gasparino, Fox Business Network, Brian Jones (the "Fox News Defendants" or "Fox"); News Corporation, Dow Jones, the Wall Street Journal, and Gerard Baker ("the News Corp. Defendants") (collectively, "Defendants").  The Court has jurisdiction of this case pursuant to 28 U.S.C. section 1332.

        Judge Aaron's Report recommended that the two motions to dismiss filed by Defendants[1] be granted, but that Plaintiff be given leave to replead certain causes of action.  The Court has reviewed thoroughly the Report, the parties' submissions on the objections, and the papers filed in connection with the underlying motions, and, for the following reasons, adopts in part the Report.

---

[1] One of the motions to dismiss was filed by Defendant Blake Neff, who has not raised any objections to the Report.

BACKGROUND

The factual background of this case was discussed in detail in the Report; the parties' familiarity with the facts is assumed. In brief, Plaintiff is a medical doctor and writer[2] who has appeared as a guest speaker on various television and radio programs. (Report at 5.) From 2008 through 2013, he appeared as a guest speaker on several Fox News shows, published several op-eds in the Wall Street Journal, and provided news tips to reporters at both Fox and the Wall Street Journal. (Id.) These business relationships eventually deteriorated, which Plaintiff attributes to his being "blacklisted" by the Defendants. (Id. at 5-6.) During one incident in March 2013, Plaintiff arrived at the Fox headquarters to appear as a program guest, but the security desk would not let him pass initially. (Id.) According to Plaintiff, the security desk employee was "clearly reading some sort of warning message on their computer screen that cautioned against allowing Plaintiff through." (Id. at 6.) In 2017, Plaintiff began to suspect that Fox anchor Tucker Carlson was misappropriating Plaintiff's written work and using it in his news segments, and was using Plaintiff's news tips without credit. (Id.) In March 2019, Plaintiff mailed copies of his book, *Rules to Stop Radicals*, to several employees at Fox, but the books were stopped in the mail room. (Id. at 6-7.) In June 2020, Plaintiff emailed Fox reporter Charles Gasparino to criticize his reporting on President Trump, to which Gasparino responded by asking Plaintiff "what's the weather like in Russia . . . Comrade," asking Plaintiff why he had been

---

[2] The Court notes that, although Plaintiff is proceeding pro se in this action, he is a fairly sophisticated and experienced litigant, who appears to possess a good understanding of the law—and thus will be treated with slightly less solicitude than might normally apply to a completely un-resourced and inexperienced pro se party. See Benitez v. King, 298 F. Supp. 3d 530, 540 (W.D.N.Y. 2018) ("[W]hile all pro se litigants deserve some degree of leniency, where a litigant has some experience with the legal system, courts may treat him less leniently than wholly inexperienced pro se litigants.") (citation omitted).

banned from the Fox building and whether it had been for "stalk[ing] someone else," calling Plaintiff a "dummy," and stating that "every harassing email you send me goes to my lawyer and the FBI." (Id. at 7.)

Plaintiff commenced this action on July 14, 2020, asserting a federal copyright infringement claim and six state law claims, stating that he was "the victim of copyright infringement, unfair competition, and misappropriation of 'hot news,' as Defendants used Greer's original and unique writings for their own television show content, without permission and without giving recognition to Greer as the originator." (Docket entry no. 1.) He filed a "corrected" complaint on July 21, 2020, containing the same claims. (Docket entry no. 6.) He filed an Amended Complaint on August 13, 2020, which dropped the federal copyright claim and asserted six state law causes of action, and alleged diversity of citizenship as the basis for jurisdiction. (Docket entry no. 40.) On September 18, 2020, a group of defendants filed a motion to dismiss for lack of subject matter jurisdiction (docket entry no. 46), asserting that two of the moving defendants were nondiverse. After some jurisdictional discovery, Judge Aaron issued a report and recommendation in December 2020 recommending that the jurisdictional motion to dismiss be granted with leave to amend, and the undersigned subsequently adopted that report and recommendation. (Docket entry nos. 121, 133.)

Plaintiff filed his Second Amended Complaint (docket entry no. 137 ("SAC")) in March 2021, dropping the two nondiverse defendants (Carlson and Strasburg), and raising eight state law causes of action. In April 2021, the Fox News Defendants, the News Corp. Defendants, and Neff moved to dismiss the SAC, and the motions were referred to Judge Aaron for a report and recommendation. (Docket entry nos. 141, 144.) Judge Aaron filed his Report on June 3, 2021, which recommends that Defendants' motions to dismiss be granted, but that

Plaintiff be given leave to replead certain causes of action.  On June 14, 2021, Plaintiff filed an objection to the Report (docket entry no. 166 ("Pl. Obj.")) asserting that several of his claims should not have been dismissed.  On June 16, 2021, Defendants filed a partial objection to the Report (docket entry no. 167 ("Def. Obj.")) asserting that all of Plaintiff's claims should have been dismissed with prejudice and without leave to amend.  Defendants also filed an opposition to Plaintiff's objection.  (Docket entry no. 171.)

## DISCUSSION

When reviewing a report and recommendation, the Court "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge."  28 U.S.C. § 636(b)(1)(C) (Westlaw through P.L. 117-166).  When a party makes specific objections to the magistrate judge's findings, the Court "shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made."  Id.  "To trigger the de novo review standard, objections to a report and recommendation must be specific and clearly aimed at particular findings in the magistrate judge's proposal."  United States v. Wofford, 527 F. Supp. 3d 486, 488 (W.D.N.Y. 2021) (citation omitted).

"[W]hen no objection is made to a portion of a report-recommendation, the Court subjects that portion of the report-recommendation to only a clear error review."  Boice v. M+W U.S., Inc., 130 F. Supp. 3d 677, 684-85 (N.D.N.Y. 2015) (emphasis omitted).  Clear error review is also triggered "when a party makes only conclusory or general objections, or simply reiterates his original arguments."  Piligian v. Icahn Sch. of Med. at Mount Sinai, 490 F. Supp. 3d 707, 715 (S.D.N.Y. 2020) (citation and quotation marks omitted).  "A magistrate judge's order is 'clearly erroneous' where 'on the entire evidence,' the district court is 'left with the definite and firm

conviction that a mistake has been committed.'" E.E.O.C. v. Teamsters Local 804, 04-CV-2409-LTS, 2006 WL 44023, at *1 (S.D.N.Y. Jan. 9, 2006) (citation omitted).

While the objections of a pro se party should be interpreted with leniency, "even a pro se party's objections to a Report and Recommendation must be specific and clearly aimed at particular findings in the magistrate's proposal, such that no party be allowed 'a second bite at the apple' by simply relitigating a prior argument." Pinkney v. Progressive Home Health Servs., No. 06-CIV-502-LTS-JCF, 2008 WL 2811816, at *1 (S.D.N.Y. July 21, 2008), aff'd, 367 F. App'x 210 (2d Cir. 2010) (citation omitted).  In addition, a district court "generally will not consider new arguments raised for the first time in objections to a magistrate judge's report and recommendation that could have been raised before the magistrate but were not." Charlot v. Ecolab, Inc., 97 F. Supp. 3d 40, 51 (E.D.N.Y. 2015); see also Illis v. Artus, No. 06-CV-307-SLT-KAM, 2009 WL 2730870, at *1 (E.D.N.Y. Aug. 28, 2009) ("Petitioner may not now raise new arguments that the magistrate judge did not have an opportunity to consider.").

In sum, where a party raises a clear, specific, and non-repetitive objection to the Report, the Court will review those portions of the Report de novo—but where a party raises conclusory objections, attempts to relitigate a prior argument, raises entirely new arguments, or raises no objections at all, those portions of the Report will be reviewed for clear error.

Objections to the Report

Both Plaintiff and Defendants lodge objections to the Report.  Plaintiff asserts that the Report erred in its analysis of: (1) the copyright preemption issues; (2) the defamation claims; and (3) the tortious interference claims.  Defendants assert that the Report was correct to recommend dismissal of all claims, but object to Judge Aaron's decision to grant Plaintiff leave

to amend. The Court concludes that Plaintiff's objections lack merit and that the Report correctly recommended dismissal of all claims. Moreover, the Court finds meritorious Defendants' arguments that leave to amend is not appropriate here, and accordingly concludes that the SAC should be dismissed in its entirety without leave to amend.

Copyright Preemption

This issue encompasses Plaintiff's First, Second, Third, and Eighth causes of action. In each of these causes of action, Plaintiff essentially claims that Defendants improperly copied or misappropriated the ideas contained in his works. Judge Aaron correctly concluded that these causes of action are preempted under federal copyright law.

The federal Copyright Act "preempts state law actions that seek to vindicate rights equivalent to those protected under the Copyright Act." Transcience Corp. v. Big Time Toys, LLC, 50 F. Supp. 3d 441, 453 (S.D.N.Y. 2014) (citing 17 U.S.C. § 301(a)). A state law claim will be preempted by the Copyright Act when: "(1) the particular work to which the claim is being applied falls within the type of works protected by the Copyright Act, and (2) the claim seeks to vindicate legal or equitable rights that are equivalent to one of the bundle of exclusive rights already protected by copyright law." Id. (citation omitted).

As set forth in greater detail in the Report, Judge Aaron concluded that Plaintiff's four state law claims (which included claims for unfair competition, unjust enrichment, misappropriation of hot news, and a claim under the California Business and Professions Code) were preempted by federal copyright law, because each of these claims sought to vindicate legal rights that are "equivalent to the exclusive rights protected by copyright law." (Report at 12.) See, e.g., Integrative Nutrition, Inc. v. Acad. of Healing Nutrition, 476 F. Supp. 2d 291, 297

(S.D.N.Y. 2007) ("The Copyright Act preempts unfair competition and misappropriation claims 'grounded solely in the copying of a plaintiff's protected expression.'") (citation omitted); Panizza v. Mattel, Inc., No. 02-CV-07722-GBD, 2003 WL 22251317, at *4 (S.D.N.Y. Sept. 30, 2003) ("The overwhelming majority of courts in this [C]ircuit have held that an unjust enrichment claim based upon the copying of subject matter within the scope of the Copyright Act is preempted."); Nat'l Basketball Ass'n v. Motorola, Inc., 105 F.3d 841, 852-53 (2d Cir. 1997) (concluding that, although claims for misappropriation of "hot news" are not always preempted by the Copyright Act, the plaintiff did not meet the criteria for this narrow exception); Kodadek v. MTV Networks, Inc., 152 F.3d 1209, 1211-13 (9th Cir. 1998) (finding that an unfair competition claim "based on purported violations of the California Business & Professions Code" was "preempted by the federal Copyright Act").

In his objection, Plaintiff now argues that Judge Aaron's preemption analysis was erroneous because (1) he did not possess a copyright registration; (2) mere ideas are not copyrightable; (3) an implied-in-fact contract existed between him and Fox. Because Plaintiff previously raised these same arguments in his opposition to the motion to dismiss (see docket entry no. 149, at 11-21), the Court reviews these issues for clear error. See Piligian, 490 F. Supp. 3d at 715 (clear error review is triggered when a party "simply reiterates his original arguments")

Plaintiff claims that the doctrine of copyright preemption cannot apply to any of his claims because he does not possess a copyright registration. This argument is unfounded, as "[t]he scope of copyright for preemption purposes . . . extends beyond the scope of available copyright protection"—in other words, for preemption purposes it does not matter whether or not Plaintiff held an official copyright registration of the works in question. Forest Park Pictures v. Universal Television Network, Inc., 683 F.3d 424, 429-30 (2d Cir. 2012); see also We Shall

Overcome Found. v. Richmond Org., Inc. (TRO Inc.), 221 F. Supp. 3d 396, 410 (S.D.N.Y. 2016) ("The scope of the subject matter of preemption is intended to be broad, and includes all works of a *type* covered by [the Copyright Act], even if federal law does not afford protection to them."). Judge Aaron correctly concluded that, because Plaintiff's claims are *of a type* with claims covered by the Copyright Act, his claims are preempted—regardless of whether he held a copyright registration.

Plaintiff next argues that the doctrine of copyright preemption cannot apply because his complaint only alleged the theft of ideas (as opposed to written materials), and because a person cannot copyright mere ideas. This argument is also erroneous. As noted by Judge Aaron, the Second Circuit has previously rejected this type of "partial preemption" notion—i.e., the notion that preemption should only apply to claims based on misappropriation of tangible mediums of expression (such as a book or recording), but not to claims for misappropriation of the underlying facts or ideas. See Nat'l Basketball Ass'n, 105 F.3d at 849; see also Wnet v. Aereo, Inc., 871 F. Supp. 2d 281, 291 (S.D.N.Y. 2012) (a plaintiff's state law claim will be preempted *both* when the plaintiff alleges "reproduction, distribution, or display of the copyrighted works themselves," *and* when the plaintiff alleges "acts of reproduction, distribution, and display of the uncopyrightable facts [or ideas] in the works"). Thus, regardless of whether Plaintiff's claims concerned the copying of his tangible works (i.e., his books), or copying of the facts and ideas contained in his books, these claims are all equally preempted under the Copyright Act, as Judge Aaron correctly concluded.

Plaintiff next alleges that the doctrine of copyright preemption cannot apply because he maintained an implied-in-fact contract with Fox (based on his history of passing on news tips and ideas to Fox reporters). Plaintiff does not explain how the existence of such a

contract would relate to the copyright preemption issue. Interpreting his arguments with leniency, the Court notes that Plaintiff may be referring to the doctrine whereby an implied-in-fact contract is not always preempted by the Copyright Act. See, e.g., Forest Park, 683 F.3d at 432 (finding that a claim for breach of an implied-in-fact contract should not be preempted by the Copyright Act).

To the extent that this argument represents Plaintiff's attempt to raise a new claim (i.e., a claim for breach of an implied-in-fact contract) at this late stage in the litigation, this attempt must fail. As an initial matter, Plaintiff has waived this issue by failing to raise it in his SAC. While Plaintiff mentioned this implied-in-fact contract idea in passing in his opposition to Defendant's motion to dismiss, his SAC did not include breach of an implied-in-fact contract as one of his eight causes of action. It is well-established that, despite the "procedural latitude" afforded to pro se plaintiffs, "courts are not required to consider claims that are raised for the first time in a pro se plaintiff's papers in opposition to a motion." Wiltshire v. Wanderman, No. 13-CV-9169 CS, 2015 WL 4164808, at *1 n.3 (S.D.N.Y. July 10, 2015) (citations omitted).

Second, even if the Court were to consider this implied-in-fact contract claim, Plaintiff has not adequately alleged its elements. As the Second Circuit has noted, "preemption cannot be avoided simply by labeling a claim 'breach of contract'"—rather, the plaintiff "must actually allege the elements of an enforceable contract (whether express or implied-in-fact), including offer, acceptance, and consideration, in addition to adequately alleging the defendant's breach of the contract." See Forest Park, 683 F.3d at 432. Even construing the SAC liberally, it is apparent that Plaintiff does not allege which defendants were parties to these alleged contracts; whether any of these defendants made promises to pay him for the use of his ideas; or what the terms of these alleged contracts were. See Betty, Inc. v. PepsiCo, Inc., 283 F. Supp. 3d 154, 166-

67 (S.D.N.Y. 2017) (concluding that the plaintiff had not adequately alleged the existence of an implied-in-fact contract because "[n]owhere does Plaintiff allege that Defendant promised to pay Plaintiff for the use of any of Plaintiff's concepts" and because "Plaintiff has not alleged any of the terms of the agreement, making it impossible to determine whether Defendant is in breach of the alleged contract").  Finally, it was proper for Judge Aaron to recommend dismissal of these preempted claims with prejudice, as leave to amend is not appropriate when a plaintiff does not "suggest any way in which his state law claims can be repleaded to avoid [] preemption." Myrieckes v. Woods, No. 08-CV-4297-GBD-THK, 2009 WL 884561, at *6 (S.D.N.Y. Mar. 31, 2009) (citation and quotation marks omitted).  The Court accordingly adopts the Report and its recommendations as to the First, Second, Third and Eighth Causes of Action.

Defamation

Plaintiff's second challenge to the Report concerns his defamation claims (pleaded in the Fourth Cause of Action).  Judge Aaron concluded that the defamation claims were not pleaded with the requisite particularity and should be dismissed with leave to amend. Plaintiff raises two main objections, arguing that: (1) he should have been allowed to conduct discovery in order to plead these claims with particularity; and (2) he sufficiently alleged defamatory statements by defendants Gasparino, Moser, and the Fox security desk employees. Defendants, however, argue that these defamation claims are clearly meritless and should have been dismissed with prejudice.

Because Plaintiff previously raised these same defamation arguments in his opposition to the motion to dismiss (see docket entry no. 149, at 26-35), the Court reviews the defamation aspect of the Report for clear error in connection with Plaintiff's objections.  As for

Defendants' objections to Judge Aaron's decision to grant leave to amend, the Court conducts a de novo review, because Defendants raise discrete objections to a specific portion of the Report. See, e.g., Berman v. Neo@Ogilvy LLC, No. 1:14-CV-523-GHW-SN, 2016 WL 815158, at *1 (S.D.N.Y. Feb. 22, 2016) ("The Court reviews the Report's recommendation that the plaintiff be granted leave to amend de novo.").

As an initial matter, Plaintiff appears to make a request for early discovery, asserting that he "should have been able to depose key witnesses who know the details" of the facts underlying his defamation claims, and requesting that the Court "allow discovery to proceed." (Pl. Obj. at 4.) This argument is misplaced. A plaintiff does not have a right to engage in early discovery in order to bolster his arguments at the motion to dismiss stage. See In re Alper Holdings, Inc., 398 B.R. 736, 754 (S.D.N.Y. 2008) (discovery is unwarranted where it would function as a "fishing expedition for evidence in search of a theory that has yet to be asserted"); Bussey v. Phillips, 419 F. Supp. 2d 569, 591-92 (S.D.N.Y. 2006) ("To the extent that [plaintiff] is arguing that additional discovery would allow him to amend his complaint to state a viable claim, the Court is similarly unpersuaded . . . [d]iscovery is not intended to be a fishing expedition.") (citation and quotation omitted).

As for the merits of the defamation claims, to allege defamation under New York law, a plaintiff must show: "(1) a written defamatory statement of and concerning the plaintiff, (2) publication to a third party, (3) fault, (4) falsity of the defamatory statement, and (5) special damages or per se actionability."  Ganske v. Mensch, 480 F. Supp. 542, 551 (S.D.N.Y. 2020). New York courts encourage the resolution of "defamation claims at the pleading stage, 'so as not to protract litigation through discovery and trial and thereby chill the exercise of constitutionally protected freedoms.'" Biro v. Conde Nast, 883 F. Supp. 2d 441, 457 (S.D.N.Y. 2012) (citation

omitted).  Plaintiff's defamation claims fall into four categories: (1) the 2013 news desk incident (in which plaintiff was refused access to the Fox building by security desk employees); (2) the 2020 Gasparino emails (in which Gasparino asked Plaintiff "what's the weather like in Russia . . . comrade," asked Plaintiff whether he had been banned from the Fox building for stalking, and stated that he was "sending [Plaintiff's'] email to the FBI"); (3) the 2020 Moser email (in which Moser referred to Plaintiff as "a nut"); and (4) other "less particular" allegations of defamation.

The Court discerns no clear error in Judge Aaron's conclusion that Plaintiff's defamation claims are critically lacking in particularity and must be dismissed.  However, upon a de novo review of the Report's recommendation of leave to replead, the Court concludes that dismissal with prejudice is the better course of action.  First, the claim pertaining to the 2013 news desk incident should be dismissed with prejudice because it is barred by the statute of limitations.  Under New York law, a defamation claim "accrues on the date of first publication," and the statute of limitations is one year.  Gelbard v. Bodary, 270 A.D.2d 866, 866 (2000). Because this incident occurred in 2013, and Plaintiff did not institute this action until 2020, this defamation claim is time-barred.  Further, Plaintiff has presented no plausible theory under which the statute of limitations might be tolled.[3]  Thus, leave to amend is denied as futile, and this claim is dismissed with prejudice.  See 421-A Tenants Ass'n, Inc. v. 125 Court St. LLC, 760 F. App'x 44, 51 (2d Cir. 2019) (affirming denial of motion for leave to amend as futile because

---

[3]  Plaintiff had argued in his opposition to the motion to dismiss that the continuing violation doctrine should apply because he continues to be damaged by the 2013 defamatory statements—but the continuing violation doctrine does not apply to the continued effects of previous defamatory conduct.  See Selkirk v. State, 249 A.D.2d 818, 819, 671 N.Y.S.2d 824, 825 (1998) (rejecting plaintiff's request that the statute of limitations on her defamation claim be tolled under the continuing violation doctrine, because this doctrine "may only be predicated on continuing unlawful acts, and not on the continuing effects of earlier unlawful conduct").

"any amendment to the complaint cannot fix the statute of limitations problem that the [plaintiffs] face").

Second, as for the 2020 Gasparino emails, Plaintiff argues that he sufficiently pled all of the elements of defamation. Defendants, however, argue that because Plaintiff cannot show that the defamatory emails were seen by anyone but Gasparino and Plaintiff themselves, he cannot satisfy the publication element. See Medcalf v. Walsh, 938 F. Supp. 2d 478, 485 (S.D.N.Y. 2013) (citation omitted) (holding that a defamatory statement "is not published if it is read by no one but the one defamed") (citation omitted). While Plaintiff does allege in his SAC that the Gasparino emails "were cc'd and reviewed by third-parties" (SAC ¶ 412), he does not state the basis for this knowledge, nor does he state who these third parties might be. See Shak v. Krum, No. 18-CV-650-LGS, 2018 WL 5831319, at *4 (S.D.N.Y. Nov. 6, 2018) ("To satisfy the publication element and survive a motion to dismiss, [Plaintiff] must identify a third party to whom the defamatory statement was allegedly published."). The SAC is also lacking with regard to the falsity and damages elements of defamation—Plaintiff does not allege which factual assertions in the Gasparino emails were false, nor does he allege how Gasparino's vague and opinion-based statements could have amounted to defamation per se. See, e.g., Mastercraft Decorators, Inc. v. Orlando, 356 F. Supp. 3d 259, 274 (W.D.N.Y. 2018) (quotation omitted) ("Loose, figurative or hyperbolic statements and unverifiable expressions of opinion are not actionable.") (citation and quotation omitted); Exec. Trim Constr., Inc. v. Gross, 525 F. Supp. 3d 357, 370-71 (N.D.N.Y. 2021) (dismissing defamation claim for failure to plead facts constituting defamation per se, because the defendant's statements did not "impugn Plaintiff's integrity or competence with allegations of fraud" and because the statements were "based on [defendant's] opinion, not fact").

Allowing amendment of this claim would be futile, as there is no indication that Plaintiff could produce additional facts would cure these deficiencies. See <u>Semper v. New York Methodist Hosp.</u>, 786 F. Supp. 2d 566, 582 (E.D.N.Y. 2011) ("[D]enial of leave to amend based on futility is proper when additional facts do not or cannot remedy the deficiency of an initial pleading."). Plaintiff has already had two prior opportunities to amend his complaint, yet has made very few substantive changes to his claims; Plaintiff himself has stated that he "needs to be able to conduct discovery now" if he is to provide further factual details on his defamation claims. (Pl. Obj. at 6.) As explained above, Plaintiff is not entitled to early discovery in order to bolster his arguments at the motion to dismiss stage, and the SAC indicates that he is unable to state a viable defamation claim. This claim is accordingly dismissed with prejudice.

Third, as for the Moser defamation claim, Plaintiff asserts that he has satisfied all elements of defamation, but Defendants argue that Moser's email statement—"[Plaintiff] may be a nut but I hope he's right"—is plainly not actionable. The Court agrees that this statement cannot support a viable defamation claim because "rhetorical hyperbole, vulgar name-calling, and generalized insults are not, without more, actionable under the defamation laws." <u>Conti v. Doe</u>, 535 F. Supp. 3d 257, 282 n.9 (S.D.N.Y. 2021). Moreover, Plaintiff does not allege how this simple name-calling constituted defamation per se or resulted in special damages, nor does he allege whom this statement was published to. As this statement is not actionable as a matter of law, denial of leave to amend is proper. Finally, as for Plaintiff's "less particular" allegations of "defamatory incidents involving Rudy Guiliani, WABC radio, Newsmax, etc.," Plaintiff himself admits that these claims "lack much detail." (Pl. Obj. at 6.) These claims are wholly lacking in specificity and do not allege facts that would satisfy any of the elements of defamation. Affording Plaintiff leave to amend these nebulous claims would, in light of

Plaintiff's admitted lack of information, be futile.  Accordingly, Plaintiff's defamation claims are dismissed with prejudice.

      Tortious Interference with Contract

      The next category of objections relates to Plaintiff's claims for tortious interference with contract and tortious interference with prospective economic advantage (Plaintiff's Fifth and Sixth Causes of Action).  The Report concluded that these claims should be dismissed without prejudice for "fail[ure] to plead essential elements."  (Report at 19.)  Plaintiff asserts that this determination was in error, while Defendants assert that Plaintiff's overly speculative claims should have been dismissed without leave to amend.  Because Plaintiff previously raised these same arguments (see docket entry no. 149, at 36-40), the Court reviews Plaintiff's objections for clear error, and conducts a de novo review of Defendants' objections.

      In his Fifth Cause of Action, Plaintiff alleged that he held implied-in-fact contracts with WABC Radio, OANN, and Rudy Giuliani (the "contracting entities") for various novel news media projects, and that Defendants improperly caused the breach of these contracts through their "defamatory blacklisting."  In his Sixth Cause of Action, Plaintiff alleged that, even if no official contracts existed for these projects, the Defendants still interfered with his prospective business relationships with these entities.

      As Judge Aaron correctly concluded, Plaintiff did not adequately allege key elements[4] of both of these claims—most prominently, knowledge by the Defendants.  Plaintiff

---

[4]   "Under New York law, the elements of tortious interference with contract are (1) 'the existence of a valid contract between the plaintiff and a third party'; (2) the 'defendant's knowledge of the contract'; (3) the 'defendant's intentional procurement of the third-party's breach of the contract without justification'; (4) 'actual breach of the contract'; and (5) 'damages resulting therefrom.'" Kirch v. Liberty Media Corp., 449 F.3d 388,

claimed that, because of the "nexus" between the Defendants and the contracting entities (i.e., the fact that many of these individuals had worked together on TV or radio shows, or were in personal contact), Defendants "likely knew" that Plaintiff was planning media projects with the contracting entities.  (SAC at 84-87.)  These speculative and conclusory allegations are insufficient to show that Defendants had any actual knowledge of the alleged contracts and/or prospective business relationships that Plaintiff may have held with the alleged contracting entities and individuals.  See Corning Inc. v. Shenzhen Xinhao Photoelectric Tech. Co., 546 F. Supp. 3d 204, 211-12 (W.D.N.Y. 2021) (to plead tortious interference with contract, a plaintiff must show that the defendant had "actual knowledge of the specific contract . . . a defendant's general awareness that the plaintiff did business with third parties is not enough") (citations omitted); see also LuxSoma LLC v. Leg Res., Inc., 289 F. Supp. 3d 514, 525 (S.D.N.Y. 2018) (a tortious interference with economic advantage claim must fail when "no reasonable juror could find that the [] Defendants knew of any dealings between [the plaintiff] and [the third-party]").  Allowing amendment of these claims would be futile, as Plaintiff has given no indication that he is capable of producing additional facts that would show knowledge by the Defendants—Plaintiff himself asserts that "for me to state with any more particularity on this matter would require discovery."  (Pl. Obj. at 7.)  Accordingly, Plaintiff's tortious interference claims are dismissed with prejudice.

---

401-02 (2d Cir. 2006) (citation omitted). "Under New York law, to state a claim for tortious interference with prospective economic advantage, the plaintiff must allege that '(1) it had a business relationship with a third party; (2) the defendant knew of that relationship and intentionally interfered with it; (3) the defendant acted solely out of malice, or used dishonest, unfair, or improper means; and (4) the defendant's interference caused injury to the relationship.'" Id. at 400 (citation omitted).

Intentional Infliction of Emotional Distress ("IIED")

The final category of objections relates to Plaintiff's claims for IIED (Seventh Cause of Action). The Report concluded that Plaintiff could not meet the "exceedingly high legal standard" for an IIED claim, but nevertheless recommended granting him leave to amend. Defendants object, arguing that leave to amend is not warranted. Plaintiff raises no objections to the Report's analysis of his IIED claims. The Court thus reviews the Report's dismissal determination for clear error, and the leave to amend determination de novo.

Under New York Law, the key element of an IIED claim is "extreme and outrageous conduct" by the defendant. Rother v. NYS Dep't of Corr. & Cmty. Supervision, 970 F. Supp. 2d 78, 104 (N.D.N.Y. 2013). Conduct is "extreme and outrageous" when it is "so outrageous in character, and so extreme in danger, as to go beyond all possible bounds of decency, and be utterly intolerable in a civilized community." Id. (quotation omitted). "Very few claims satisfy the extreme and outrageous requirement of an IIED claim." Id. (citation omitted). "Whether or not the requisite outrageousness of the conduct has been satisfied by the allegations [in the complaint] is, in the first instance, an issue of law for judicial determination." 164 Mulberry St. Corp. v. Columbia Univ., 4 A.D.3d 49, 56 (2004). Further, if a plaintiff fails to put forth plausible allegations of extreme and outrageous conduct, it is appropriate to dismiss without leave to amend because "any amendment would be futile." See Rother, 970 F. Supp. 2d at 106. "IIED claims have a one-year statute of limitations." Id. at 104.

Plaintiff claims that Defendants intentionally caused him emotional distress during three incidents: (1) the 2013 Fox security desk incident; (2) the 2020 Gasparino emails; and (3) Fox's failure to allow Plaintiff's books "past the mail room security screening process." (SAC ¶ 459-68.) The Court concludes that each of these claims should be dismissed without

leave to amend because amendment would be futile.  First, as to the security desk incident, this claim is clearly time-barred—this incident occurred in 2013, and the statute of limitations for IIED claims is one year.  Any arguments regarding the "continuing violation" doctrine are inapposite here, for the reasons explained above (in relation to Plaintiff's defamation claim).  (See supra, at 12-13.)

Second, with respect to the Gasparino emails, the court concludes that Plaintiff's allegations are insufficient as a matter of law to frame a viable claim of outrageous conduct.  See Semper, 786 F. Supp. 2d at 586 ("Whether the conduct is 'outrageous' is a matter of law to be decided by the court.") (citation omitted).  The Gasparino emails were essentially an incident of petty name-calling, which at most might be interpreted to constitute an accusation that Plaintiff had been "banned from the Fox building" for "stalk[ing] someone else."  (Report at 7.)  However, to rise to the level of IIED, the conduct "must consist of more than mere insults, indignities, and annoyances," 164 Mulberry St, 4 A.D.3d at 56, and "false accusations of criminal conduct, or conduct that society deems reprehensible, do not inherently establish IIED," Truman v. Brown, 434 F. Supp. 3d 100, 119 (S.D.N.Y. 2020).  Allowing amendment of this claim would be futile, as there is no indication that Plaintiff could produce additional facts to cure this deficiency.  Finally, Plaintiff's IIED claim relating to the Fox mailroom treatment of his book should also be denied with prejudice, as this claim does not allege any actions even approaching outrageous conduct, and there is likewise no indication that amendment would cure this deficiency.

CONCLUSION

For the reasons set forth above, the Report is adopted insofar as it recommends the dismissal of all of Plaintiff's claims.  Plaintiff's objections to the Report are overruled, and Defendants' objections to the Report are sustained.  The motions to dismiss are granted in full and the SAC is dismissed with prejudice.  The Clerk of Court is respectfully directed to enter judgment accordingly and close this case.  The pro se plaintiff has consented to electronic service.

This Memorandum Order resolves docket entry nos. 141 and 144.

SO ORDERED.

Dated: New York, New York
September 7, 2022

/s/ Laura Taylor Swain
LAURA TAYLOR SWAIN
Chief United States District Judge